# In the United States Court of Appeals for the First Circuit

_____

## UNITED STATES OF AMERICA,
_Appellee,_

v.

## LUIS ENRIQUE OJEDA-PEÑA,
_Defendant-Appellant._

_____

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 23-011-1 (FAB)
Hon. Francisco A. Besosa, U.S. District Judge

---

## APPELLANT'S OPENING BRIEF

---

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Joanna_LeRoy@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appellate Unit

**JOANNA LEROY**
Assistant Federal Public Defender

Attorneys for Defendant-Appellant
**LUIS OJEDA-PEÑA**

TABLE OF CONTENTS ................................................................. II

TABLE OF AUTHORITIES ...................................................... V-VIII

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ................................. IX

JURISDICTION .................................................................... 2

THE ISSUES ...................................................................... 3

STATEMENT ....................................................................... 4

    A.    Mr. Ojeda was charged federally with a U.S. Code offense. ....................................................... 4

    B.    Mr. Ojeda was charged in state court for "relevant conduct" to the U.S. Code offense. ......................... 4

    C.    Mr. Ojeda quickly plead guilty pursuant to a plea agreement between the parties. ............................... 5

    D.    At sentencing, the district court did not follow the plea agreement and sentenced Mr. Ojeda to 300 months' imprisonment and a supervised release term of life. ............. 6

        1.    The district court imposed a sentence of imprisonment below the PSR-calculated guidelines range. .................... 6

        2.    Despite finding mitigating factors warranting a below-Guidelines sentence, the district court imposed a supervised release term of life. .......................... 7

    E.    The district court failed to impose the sentence concurrent to Mr. Ojeda's state court sentence. ..................... 8

    F.    The district court, without making any finding of non-indigency, imposed a $5,000 special monetary assessment. ................................................. 9

SUMMARY OF THE ARGUMENT ................................................. 10

ARGUMENT ............................................................. 11

I.   The district court failed to consider the § 5G1.3(c)mandate
     and order the sentence imposed run concurrent to the
     anticipated state court sentence for relevant conduct. ............... 11

     A.   Standard of review ............................................. 11

     B.   The plain language of and policy behind the Guidelines
          mandated concurrence. ......................................... 12

          1.   The Guidelines make clear that the district court should
               have imposed its sentence to run concurrent with the
               state court sentence. ..................................... 12

          2.   Public policy supports imposing concurrence in this
               context. ................................................. 15

II.  The district court erred when it imposed a special monetary
     assessment of $5,000. ............................................... 19

     A.   Standard of Review and Applicable Law .......................... 19

     B.   Discussion .................................................... 20

III. The district court's imposition of a supervised release term of
     life was unreasonable. .............................................. 24

     A.   Standard of Review and Applicable Law .......................... 24

     B.   The district court erred by failing to explain its
          imposition of a supervised release term of life,
          especially given the mitigating circumstances on the
          record. ...................................................... 27

          1.   By failing to explain the reason for its sentence, the
               district court committed procedural error ................ 27

          2.   The record before the court warranted a lower supervised
               release term. ............................................ 28

CONCLUSION ........................................................... 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

FEDERAL CASE LAW                                                  PAGE

*Hughes v. United States,*
   584 U.S. 675 (2018) .............................................................. 13

*Puerto Rico v. Sánchez-Valle,*
   579 U.S. 59 (2016) ................................................................. 4

*Setser v. United States,*
   566 U.S. 231 (2012) ........................................................ 14, 16

*United States v. Gall,*
   552 U.S. 38 (2007) .......................................................... *passim*

*United States v. Rita,*
   551 U.S. 338 (2007) ........................................................ 18, 19

*Witte v. United States,*
   515 U.S. 389 (1995) .............................................................. 15

*United States v. Almonte-Núñez,*
   771 F.3d 84 (1st Cir. 2014) ................................................. 11

*United States v. Breton,*
   740 F.3d 1 (1st Cir. 2014) ................................................... 25

*United States v. Carrasco-De-Jesús,*
   589 F.3d 22 (1st Cir. 2009) ........................................... 14, 15

*United States v. Concepcion,*
   991 F.3d 279 (1st Cir. 2021) ............................................... 14

*United States v. Fowler,*
   956 F.3d 431 (6th Cir. 2020) ............................................. 21

*United States v. Martin,*
520 F.3d 87 (1st Cir. 2008)....................................................27

*United States v. Montero-Montero,*
817 F.3d 25 (1st Cir. 2016)....................................................11

*United States v. Pabon,*
819 F.3d 26 (1st Cir. 2016)....................................................28

*United States v. Politano,*
522 F.3d 69 (1st Cir. 2008)....................................................25

*United States v. Procell,*
31 F.4th 32 (1st Cir. 2022) ..............................................20, 23

*United States v. Robles-Alvarez,*
874 F.3d 46 (1st Cir. 2017)....................................................18

*United States v. Santiago,*
769 F.3d 1 (1st Cir. 2014)......................................................25

*United States v. Serunjogi,*
767 F.3d 132 (1st Cir. 2014)..................................................25

## STATUTES

18 U.S.C. § 2251 .........................................................4, 6, 20

18 U.S.C. § 2251(a) ..........................................................2, 5

18 U.S.C. § 2251(e) ...........................................................17

18 U.S.C. § 2422(b)(2)..........................................................4

18 U.S.C. § 3014 ..................................................................9

18 U.S.C. § 3014(a) ...............................................19, 20, 23

18 U.S.C. § 3014(f)...................................................................24

18 U.S.C. § 3231 ......................................................................2

18 U.S.C. § 3553(a)..........................................................*passim*

18 U.S.C. § 3553(a)(2)(A)........................................................26

18 U.S.C. § 3553(a)(2)(B)-(D)..................................................26

18 U.S.C. § 3553(c) ..................................................................17

18 U.S.C. § 3583(c) .............................................................25, 26

18 U.S.C. § 3583(k)..............................................................7, 28

18 U.S.C. § 3584(a).............................................................14, 17

18 U.S.C. § 3584(b).................................................................14

18 U.S.C. § 3612(f)(1) ..............................................................24

18 U.S.C. § 3612(f)(2) ..............................................................24

18 U.S.C. § 3742(a) ...................................................................2

18 U.S.C. § 3583(k)..................................................................23

28 U.S.C. § 1291 ......................................................................2

## RULES

Fed. R. Crim. P. 51(b)...............................................................19

## United States Sentencing Guidelines

U.S.S.G. § 1B1.3(a)(1)(A).................................................................... 12

U.S.S.G. § 5A ...................................................................................... 5

U.S.S.G. § 5G1.3 ........................................................................... 14, 15

U.S.S.G. § 5G1.3(c) ....................................................................... *passim*

## Other Sources

United States Sentencing Commission, Amendment 787 (November 1, 2014)https://www.ussc.gov/guidelines/amendment/787#:~:text=This%20 amendment%20creates%20a%20new,of%20imprisonment%20if%20%C2 %A75G1. ................................................................................................ 16

United States Sentencing Commission,
The Effects of Aging on Recidivism Among Federal Offenders (December 7, 2017),
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_
Recidivism-Age.pdf ............................................................................. 29

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Mr. Ojeda-Peña respectfully requests oral argument before this Court on all issues raised herein. His Counsel submits that his familiarity with the issues will substantially assist this Court in its resolution of the case.

# In the United States Court of Appeals for the First Circuit

---

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**LUIS ENRIQUE OJEDA-PEÑA,**
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 23-CR-011-FAB-1
Hon. Francisco A. Besosa, U.S. District Judge

---

## APPELLANT'S OPENING BRIEF

---

TO THE HONORABLE COURT:

Defendant-Appellant Luis Ojeda-Peña ("Mr. Ojeda"), represented by the Federal Public Defender for the District of Puerto Rico through undersigned counsel, respectfully states and prays:

# JURISDICTION

Mr. Ojeda appeals from the district court's September 6, 2023 judgment sentencing him to 300 months' imprisonment, a supervised release term of life, and the imposition of a $5,000 assessment pursuant to the Justice for Victims of Trafficking Act.[1] AD1-AD8. The sentence followed a conviction, by guilty plea, for attempted production of child pornography, 18 U.S.C. § 2251(a). AD1-AD8. Mr. Ojeda timely appealed on September 14, 2023. A8.

The district court exercised original jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction. 18 U.S.C. § 3742(a); 28 U.S.C. § 1291.

Mr. Ojeda is currently in custody serving a 15-year state sentence for relevant conduct.

---

[1] Citations: Docket entries in No. 23-cr-11-FAB-1 ("DE-[]"); Addendum ("AD."); Appendix ("A"); Sealed Supplemental Appendix ("SA").

## THE ISSUES

I.      The Guidelines instruct that a federal sentence shall be imposed concurrent to any anticipated state court sentence for relevant conduct. Did the district court err when it failed to address the Guidelines' directive and instead left the decision regarding concurrence of Mr. Ojeda's related federal and state cases to the state court?

II.      Did the district court err when it ordered Mr. Ojeda to pay a $5,000 assessment, which is only applicable to non-indigent persons, without any factual finding as to Mr. Ojeda's indigency?

III.      The district court condemned Mr. Ojeda to a supervised release term of life—the maximum allowed by statute—without stating on the record any reason for doing so. Was the court's imposition of the maximum supervision term unreasonable?

**A.  Mr. Ojeda was charged federally with a U.S. Code offense.**

In January 2023, Mr. Ojeda was charged via indictment with, *inter alia*, attempted production of child pornography under 18 U.S.C. § 2251, for attempting to coerce his nine-year-old stepdaughter into recording herself engaging in sexually explicit conduct. A2 (DE-3).[2] The charged conduct took place between July and August 2022. A2 (DE-3).

**B.  Mr. Ojeda was charged in state court[3] for "relevant conduct" to the U.S. Code offense.**

Prior to being charged in this case, Mr. Ojeda was arrested by the Puerto Rico Police on August 10, 2022, for conduct relevant to the present offense.[4] SA4, ¶ 13. The charges were for negligence towards a minor, sexual assault of a minor, and sexual lewd act with a minor, also relating

---

[2] The indictment also charged coercion and enticement of a minor under 18 U.S.C. § 2422(b)(2), but that charge was dismissed at sentencing. A9; A26.

[3] Though Puerto Rico is considered a territory of the United States and not a state, this brief refers to Puerto Rico territorial court as "state court" for ease of reading. *See Puerto Rico v. Sánchez-Valle*, 579 U.S. 59, 63-65 (2016) (explaining Puerto Rico's status as a U.S. territory).

[4] The PSR incorrectly lists a June 1, 2022 arrest date. SA9, ¶ 46.

to the stepdaughter. SA9, ¶ 46. He remained in state custody until he was brought into federal custody for this case on January 20, 2023, on a writ of *habeas corpus ad prosequendum*. A3 (DE-8); SA5, ¶ 18 n.5. An initial appearance in this case was held on that date. A3 (DE-10). Mr. Ojeda continued to litigate both this matter and the parallel state case.

### C. Mr. Ojeda quickly pleaded guilty pursuant to a plea agreement between the parties.

Less than six months later, Mr. Ojeda accepted responsibility for the charged federal conduct and signed a plea agreement with the government. A11. Under that agreement, Mr. Ojeda would plead guilty to count 1 of the indictment for violating § 2251(a) and (e). A11-A12. The parties agreed to jointly request "a sentence of imprisonment equal to the lower end of the applicable sentencing guideline range at a total offense level [TOL] of 37 combined with defendant's criminal history category [CHC] as determined by the Court." A14, ¶ 6. The Presentence Investigation Report (PSR) determined that Mr. Ojeda had a CHC of I which, when combined with a TOL of 37, produces a recommended sentence of 210 months at the lower end of the Guidelines range. U.S.S.G. § 5A; SA9, ¶ 44; *see also* A36; A40.

The plea agreement also stated that the parties would recommend that the term of imprisonment be "followed by a term of supervised release as mandated by law." A14, ¶ 6. The parties also recommended that the sentence imposed in this case be served concurrently with Mr. Ojeda's related state court case that was pending at the time of sentencing. *Id* Finally, Mr. Ojeda would waive his right to appeal any part of his sentence if the district court sentenced him to 235 month or less of imprisonment. A14, ¶ 8.

### D. At sentencing, the district court did not follow the plea agreement and sentenced Mr. Ojeda to 300 months' imprisonment and a supervised release term of life.

#### 1. The district court imposed a sentence of imprisonment below the PSR-calculated Guidelines range.

The sentencing hearing was held on September 6, 2023. A6 (DE-33). The PSR, due to several enhancements not contemplated in the plea agreement, calculated the applicable Guideline range to be life imprisonment. SA15, ¶ 80. However, because the maximum term of incarceration under § 2251 is 30 years, the applicable Guideline term of imprisonment is 360 months. SA15, ¶ 80. The district court agreed with the PSR's Guidelines calculations and the applicable supervised release

term. A46. The district court remarked that the parties' recommendation in the plea agreement did not sufficiently consider the § 3553(a) factors, but identified enough mitigating factors to impose a downward variance, sentencing Mr. Ojeda to 300 months–or 25 years–of imprisonment. A47-A48.

> **2. Despite finding mitigating factors warranting a below-Guidelines sentence, the district court imposed a supervised release term of life.**

The PSR explained that the applicable term of supervised release is five years to life. SA14, ¶¶ 82-83; *see also* 18 U.S.C. § 3583(k). The district court said it could impose the supervision term anywhere within that range. A58. Without any explanation or citation to the Guidelines, the district court sentenced Mr. Ojeda to the highest supervised release term allowed by statute: life. A48. Defense counsel objected, explaining the many mitigating reasons why a lifetime of supervised release term is excessive, such as his age (37 at the time) and the already high term of imprisonment of 25 years that Mr. Ojeda would serve. A24. The district court noted the objection and provided no further explanation. A59.

**E.    The district court failed to impose the sentence concurrent to Mr. Ojeda's state court sentence.**

The parties' plea agreement and the PSR clarified that the sentence imposed in this case should run concurrent to the anticipated state sentence for relevant conduct set for September 13, 2023, just over a week later. A14, ¶ 6; SA10, ¶ 46. At sentencing, defense counsel informed the district court that § 5G1.3(c) of the Guidelines mandates that, because the state case involved relevant conduct, "the sentence for the instant offense shall be imposed to run concurrently to the anticipated state term of imprisonment." A57-58; *see also* U.S.S.G. § 5G1.3(c). The district court agreed that the pending state court case is "considered relevant conduct to this case." A46. The district court, however, left the concurrency issue to the state court judge, despite the Guidelines' directive. A48. The district court provided no reason for its deviation from § 5G1.3(c), even after objection from defense counsel. A48; A57-A58.

At the September 13 state court sentencing hearing, the court sentenced Mr. Ojeda to 15 years in prison and was silent on whether that

sentence would run concurrent to the sentence imposed by the district court in this case. AD8-AD9.[5]

### F. The district court, without making any finding of non-indigency, imposed a $5,000 special monetary assessment.

Finally, the district court imposed upon Mr. Ojeda a $5,000 assessment under the Justice for Victims of Trafficking Act. A54; *see also* 18 U.S.C. § 3014. As defense counsel made clear at sentencing, that assessment is only to be imposed upon any "non-indigent" person for certain sex offenses, and the record reflected that Mr. Ojeda did not have the means to make the $5,000 payment. A59. Indeed, the PSR indicated that Mr. Ojeda did not have the resources to pay such an assessment. SA15, ¶ 78, n.7. Despite the record before it, the district court did not reconsider; instead, it delegated the task of determining Mr. Ojeda's indigency to the "Financial Litigation Unit at the U.S. Attorney['s] Office" upon his release. A59.

This appeal follows.

---

[5] Mr. Ojeda will be filing a certified English language translation of the state court judgment.

First, the district court committed reversible error when it failed to order that the sentence it imposed run concurrently to Mr. Ojeda's anticipated state sentence for relevant conduct. The Guidelines mandate such concurrence, and the district court erred by failing to provide any reason for deviating from the Guidelines rule.

Second, the Court should vacate the district court's imposition of a $5,000 special monetary assessment under the Justice for Victims of Trafficking Act. Such payment is reserved only for non-indigent persons, and the record shows that Mr. Ojeda does not have the resources to pay the assessment. The sentencing court erred by failing to make any finding of non-indigency, instead improperly delegating the responsibility to the government upon Mr. Ojeda's release.

Last, the district court's imposition of a supervised release term of life is unreasonable and should be vacated. Despite imposing a downwardly variant sentence of imprisonment, the district court, without explanation and in the face of mitigating factors, unreasonably sentenced Mr. Ojeda to a lifetime term of supervised release, the maximum allowed by statute.

## I. The district court failed to consider the § 5G1.3(c) mandate and order the sentence imposed run concurrent to the anticipated state court sentence for relevant conduct.

The district court was on notice that Mr. Ojeda was facing a state court sentence for relevant conduct just days after his sentencing hearing in this case. And despite finding that the offense for which he was to be sentenced in state court constituted relevant conduct as that term is defined in the Guidelines, it erroneously delegated its responsibility to impose sentence concurrent to that case to the state court judge. Given the Guidelines' clear recommendation and the policy reasons for concurrence in this context, the district court's failure to address the issue of concurrence was procedurally and substantively unreasonable.

### A. Standard of review

Claims of sentencing error are generally reviewed for abuse of discretion. *See United States v. Gall*, 552 U.S. 38, 51 (2007); *United States*

---

[6] Under the plea agreement, Mr. Ojeda would waive his appellate rights if sentenced to 235 months or less of imprisonment. A14, ¶ 8. Because the district court sentenced him to over 235 months, the conditional appeal waiver provision is unenforceable. *See United States v. Almonte-Núñez*, 771 F.3d 84, 88-89 (1st Cir. 2014).

*v. Montero-Montero*, 817 F.3d 25, 37 (1st Cir. 2016). If the district court commits a significant procedural error, such as "failing to adequately explain the chosen sentence," especially one outside of the sentencing recommendation, it abuses its discretion. *Gall*, 552 U.S. at 51.

**B.    The plain language of and policy behind the Guidelines mandated concurrence.**

**1.    The Guidelines make clear that the district court should have imposed its sentence to run concurrent with the state court sentence.**

Section 5G1.3(c) of the Guidelines states:

> "If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of [relevant conduct], the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment."

As pertinent here, the Guidelines define "relevant conduct" as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant … that occurred during the commission of the offense of conviction …." U.S.S.G. § 1B1.3(a)(1)(A). There is no dispute that the offense for which Mr. Ojeda was facing sentencing in state court constituted relevant conduct to the instant offense. The parties recommended in the plea agreement that the

current sentence be served concurrently to the anticipated state court sentence, A14, ¶ 6; the PSR acknowledged that the two cases constitute relevant conduct, SA9, ¶ 46; and the district court agreed at sentencing, finding that the pending state court case is considered relevant conduct to the present case, A46.

The sentencing hearing in this case was held on September 6, 2023. *See* A6. The state court sentencing for the relevant conduct was shortly thereafter on September 13, 2024. SA10, ¶ 46. Thus, there can be no doubt that, at the time of sentencing, "a state term of imprisonment [was] anticipated to result from another offense that is relevant conduct to the instant offense of conviction …" U.S.S.G. § 5G1.3(c). The Guidelines therefore instructed the district court that it "shall" impose the sentence for the instant offense "to run concurrently to the anticipated term of imprisonment." *Id.* It instead opted to leave the decision to the state court judge, in direct defiance of the Guidelines' directive. A47.

### 2. The district court erred by not explaining its failure to address the concurrency issue.

While after *Booker* the Guidelines are only advisory, "a district court must consult those Guidelines and take them into account when sentencing." *Hughes v. United States*, 584 U.S. 675, 681 (2018). Moreover,

it is widely recognized that district courts have discretion to choose whether the sentences they impose run concurrently or consecutively to other sentences, including anticipated state sentences. *See Setser v. United States*, 566 U.S. 231, 236 (2012); 18 U.S.C. § 3584(a).

And "it is a classic abuse of discretion for a district court to decline to exercise the discretion that it legally possesses because it mistakenly believes that it lacks that discretion as a matter of law." *United States v. Concepcion*, 991 F.3d 279, 292 (1st Cir. 2021) (Barron, J., dissenting). Here, the district court simply did not take § 5G1.3(c) into account. And the language used by the district court does not instill confidence that it properly understood its discretion regarding the concurrency issue. *See* A48 ("whether this term of imprisonment would run concurrently or consecutively with the sentence to be imposed by the Commonwealth … will be left to the judge of the Commonwealth Court.").

Further, in exercising that discretion to impose concurrent or consecutive sentences for relevant conduct, the court "shall consider" the factors set forth in § 3553(a). 18 U.S.C. § 3584(b); *see also United States v. Carrasco-De-Jesus*, 589 F.3d 22, 27 (1st Cir. 2009) (explain that the district court, "when exercising its discretion under [§ 5G1.3], the

sentencing court is under a direction to consider the factors enumerated in 18 U.S.C. § 3553(a), including any applicable sentencing guidelines and policy statements."). Here, the district court provided no reason whatsoever for its decision to ignore § 5G1.3, much less how it weighed the § 3553(a) factors. *Cf. Carrasco-De-Jesús*, 589 F.3d at 29 (finding that, because the district court "weighed all the appropriate factors, [i]ts declination to impose a concurrent sentence was a quintessential judgment call, free from procedural error"). It therefore committed procedural error when it passed on the concurrency issue without explanation.

### 3. Public policy supports imposing concurrence in this context.

The court's error is especially egregious because it could lead to the exact result that the Supreme Court and the Guidelines try to avoid. In *Witte v. United States*, the Supreme Court explained that the concept of relevant conduct in the Guidelines "operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase defendant's sentence." 515 U.S. 389, 405 (1995). These safeguards built into the Guidelines "therefore protect [a defendant] against having the length of his sentence multiplied by duplicative consideration of the same

criminal conduct ...." *Id.* And the Supreme Court later affirmed the district court's discretion to anticipate a state sentence not yet imposed. *Sester*, 566 U.S. at 236.

The Guidelines, recognizing these principles laid out by the Supreme Court, implemented Amendment 787 to add § 5G1.3(c).[7] In doing so, the Guidelines recognized the principles expounded in *Setser* and added that provision to ensure that the district court had discretion to impose concurrent sentences not only to state sentences already imposed, but also to those not yet imposed. *Id.* This Amendment was designed to reduce disparities between defendants whose state sentences have already been imposed—the only circumstances previously contemplated by the Guidelines—and those who are anticipating a state sentence, thereby promoting "certainty and consistency" in the context of multiple cases for relevant conduct. *Id.*

Here, the district court did not follow the Guidelines' directive to impose its sentence to run concurrently to the anticipated state court

_____

[7] United States Sentencing Commission, Amendment 787 (November 1, 2014)https://www.ussc.gov/guidelines/amendment/787#:~:text=This%20 amendment%20creates%20a%20new,of%20imprisonment%20if%20%C2 %A75G1.

sentence. In fact, it did not even acknowledge the Guidelines at all. Though the district court stated it was leaving the concurrency issue to the state court judge, the state court—not bound by the federal Guidelines—remained silent on the issue. A47. Without direction from either, Mr. Ojeda effectively will serve an aggregate term of 40 years of imprisonment for related conduct, resulting in the kind of "duplicative" punishment that the Supreme Court and the Guidelines have sought to avoid. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different time run consecutively *unless the court orders* that the terms are to run concurrently.") (emphasis added).

The result is a *de facto* sentence of 40 years for overlapping conduct, an unreasonable sentence by any measure, especially given the statutory maximum of 30 years for the offense. 18 U.S.C. § 2251(e).

## C. The district court had an obligation to address Mr. Ojeda's non-frivolous arguments and failed to do so.

While the extent of a district court's explanation for a sentencing decision depends on context, it "should at least set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Rita*, 551 U.S. 338, 356 (2007). This

requirement is not onerous in the 'typical case' where application of the guidelines is straightforward," as it is here. *United States v. Robles-Álvarez*, 874 F.3d 46, 52 (1st Cir. 2017) (citing *Rita*, 551 U.S. at 357). Where a party attempts to ring a "forceful" argument to the court's attention, the court's failure to "even provide a cursory explanation for its rejection of his argument" is procedurally unreasonable. *Id.* at 53.

Because the district court declined to address the concurrency issue despite the Guidelines' mandate, the parties' recommendation, and the PSR, its reasoning cannot be inferred from the record. *See id* at 52 (explaining that in some circumstances a district court's reasoning "can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did"). In this context, the district court should have gone "further and explain[ed] why [it] has rejected [the parties' non-frivolous] arguments." *Id.* It did not. Rather, it provided no explanation at all for why it rejected Mr. Ojeda's "forceful" argument as to concurrency. *Id.* at 53. Mr. Ojeda's argument— which was also agreed to in the plea agreement and PSR—was particularly powerful because it comported with the Guidelines and its rejection resulted in an aggregate sentence of 40 years for overlapping

conduct. The district court's failure to even address that argument was procedural error. *See Rita*, 551 U.S. at 356.

## II. The district court erred when it imposed a special monetary assessment of $5,000.

The district court ordered Mr. Ojeda to pay a $5,000 special monetary assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act (JVTA). A20. However, the payment under the JVTA is only to be assessed on "non-indigent" persons. 18 U.S.C. § 3014(a). The district court erred because it never made a finding regarding Mr. Ojeda's indigency, incorrectly stating that the government could make that determination upon his release. And the record showed that Mr. Ojeda did not have the means to pay the special $5,000 assessment, plus the accumulated interest, upon release. A25.

### A. Standard of Review and Applicable Law

Because Mr. Ojeda objected to the imposition of the $5,000 payment at the time of sentencing, *see* A20, the issue is preserved. *See* Fed. R. Crim. P. 51(b). Whether a district court properly ordered payment of the special $5,000 assessment is generally reviewed for clear error. *United States v. Procell*, 31 F.4th 32, 38 (1st Cir. 2022).

Under the JVTA, "the court shall assess an amount of $5,000 on any non-indigent person" convicted of certain offenses, including one under 18 U.S.C. § 2251. 18 U.S.C. § 3014(a). The JVTA is silent on whether a court should consider future earning potential in determining whether a person is indigent. *Id.* But district courts sometimes consider future earning capacity as one factor in deciding whether the person must pay the $5,000 assessment. *See Procell*, 31 F.4th at 38.

## B. Discussion

The district court erred when it ordered Mr. Ojeda to pay a $5,000 fine. First, the JVTA states that the *court* shall impose the assessment, not the "Financial Litigation Unit at the U.S. Attorney['s Office]," as the district court ruled below. A59. Thus, as part of its obligation to comply with the statute, the district court was required to make fact findings as to Mr. Ojeda's indigency. *Cf. Procell*, 31 F.4th at 38 (reviewing the record and finding that defendant had the means to pay considering, *inter alia*, his bachelor's degree in engineering and prior employment as a science teacher). It failed to do so. A59. And the only other time the court referred to Mr. Ojeda's economic situation was to exempt him from paying a regular fine given his "financial condition." A53-A54.

Second, counsel objected to the imposition of the $5,000 assessment at sentencing, noting the various factors on the record demonstrating that Mr. Ojeda is indigent. A58-A59. The district court merely responded that it didn't know whether Mr. Ojeda was indigent or not, rather than making a finding as required by the JVTA. A59. This failure to make the appropriate finding was reversible error. *See United States v. Fowler*, 956 F.3d 431, 438 (6th Cir. 2020) (holding that the district court had to consider defendant's ability to pay before imposing special assessment). The court erroneously delegated that responsibility to the U.S. Attorney's office upon Mr. Ojeda's release. A59.

Lastly, the record supports a finding that Mr. Ojeda is indigent and, as such, should have been exempted from payment. The district court, in a separate context, noted that prior to his arrest in this case, he had been unemployed for six months. A46. Before that, he had sparingly held various low-paying jobs at Papa John's Pizza, at Walmart, and driving for DoorDash. SA13-14, ¶¶ 71-73. While he has a technical degree in cooking, he never worked in that field. SA13-14, ¶¶ 71-73. He has four children and owes over $40,000 in child support. SA10, ¶ 53; SA14, ¶ 75. He suffers from depression and anxiety, which has been exacerbated by

the present case and could serve as an obstacle to future employment. *See* SA12, ¶¶ 62-63. He also had a court-assigned attorney, precisely because of his indigency status. Even Probation's investigation concluded that, given his economic situation, Mr. Ojeda was not able to pay the assessment. SA15, ¶ 78, n.7.

As counsel brought to the district court's attention when objecting to the imposition of the fine, Mr. Ojeda has no assets, and his age will be a limiting factor on future employment. A59. Mr. Ojeda was 37 years old at the time of sentencing and will be over 60 years old upon release after completing his 25-year sentence.[8] A58. In addition to the obstacle of his age, Mr. Ojeda will have to register as a sex offender upon release, and his supervised release conditions impose several limitations on the type of employment he may have. A50-A51. The record therefore reflects that Mr. Ojeda's earning capacity upon release is extremely impaired, and, had the district court engaged in the appropriate fact finding, it would have most likely found him to be indigent.

---

[8] Moreover, depending on the outcome of the concurrency issue discussed *supra* in Section I, his total time of incarceration could be up to 40 years if the present sentence is to be served consecutively to his 15-year state sentence. In that case, he would be in his late 70s upon release.

The district court erred in imposing the special assessment without deciding whether Mr. Ojeda was a nonindigent person. That error was especially misguided given that the Court seemed to believe that the indigency determination was to be made by the U.S. Attorney's office upon his release. A59. Not so; the JVTA makes clear that that determination is the obligation of the sentencing court. 18 U.S.C. § 3014(a). Moreover, the record that was before the district court demonstrated that he is indigent and should have been excluded from the payment. Considering Mr. Ojeda's economic situation at the time of sentencing, his debts, his lack of consistent or meaningful employment, the required disclosure of his sex-offender status to potential employers, his age at the time of release, and the other limitations on future employment, it was error to order him to pay the special assessment. *Cf. Procell*, 31 F.4th at 38 (finding no error where defendant had an annual salary of $59,000 as well as prior work history and was only 25 years old at the time of sentencing with years of earning potential upon release).

Given that the $5,000 monetary assessment started accruing interest 15 days after judgment was entered, 18 U.S.C. § 3612(f)(1), this monetary sanction will have compounded exponentially by the time of his

release in 25 (perhaps 40) years, less any goodtime.[9] The Court should therefore vacate the imposition of the $5,000 assessment under the JVTA.

## III. The district court's imposition of a supervised release term of life was unreasonable.

The statute under which Mr. Ojeda was convicted carries a supervised release term upon release from imprisonment of 5 years to life. *See* 18 U.S.C. § 3583(k). The district court, without explanation or reference to the record, leaped to the maximum term possible—"the rest of his life." A48. Given that the record reflected facts that supported a lower supervised release term, and with no elucidation into its decision, the district court's imposition of a supervised release term of life was unreasonable.

### A.    Standard of Review and Applicable Law

A district court's criminal sentence, including the imposition of a supervised release term, is reviewed for reasonableness using an abuse

---

[9] *See* 18 U.S.C. § 3612(f)(2) (interest on any fine or restitution is computed daily "at a rate equal to the weekly average 1-year constant maturity Treasury yield"); 18 U.S.C. § 3014(f) (special assessment under JVTA shall "be collected in the manner that fines are collected in criminal cases").

of discretion standard. *See United States v. Serunjogi*, 767 F.3d 132, 142 (1st Cir. 2014); *United States v. Santiago*, 769 F.3d 1, 7 (1st Cir. 2014) ("[A] supervised release term is part of a sentence.").[10] Reasonableness is a bifurcated inquiry: the Court must first determine first whether the sentencing judge committed any procedural errors and, if not, whether the sentence was substantively reasonable. *See id.; United States v. Breton*, 740 F.3d 1, 19 (1st Cir. 2014). "The linchpin of a reasonable[] sentence is a plausible sentencing rationale and a defensible result." *United States v. Politano*, 522 F.3d 69, 73 (1st Cir. 2008) (citations omitted).

When determining the length of a term of supervised release after imprisonment, the district court must consider the sentencing factors set forth in certain provisions of 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(c). Those factors include: the need "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; "to provide the defendant with the needed educational or vocational training,

---

[10] Here, too, defense counsel properly objected to the district court's imposition of a supervised release term of life, noting that it was "excessive" and "unreasonable." A58.

and "medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(B)-(D). Notably, the supervised release statute does not include 18 U.S.C. § 3553(a)(2)(A), the seriousness of the offense, as a factor to be considered when deciding the length of a supervised release term. 18 U.S.C. § 3583(c).

These factors should be weighed with the understanding that any kind of probationary sentence constitutes a "substantial restriction of freedom," and the conditions imposed "substantially restrict [a person's] liberty." *Gall*, 552 U.S. at 48. This is especially true for supervised release terms for sex offenses, which include numerous and extremely restrictive special conditions. *See* A48-53.

The Guidelines are merely a "starting point" for sentencing. *Gall*, 552 U.S. at 48. at 49. After determining the applicable guidelines, the district court should then hear from the parties regarding the proper sentence and weigh the § 3553(a) factors, "reaching an ultimate sentencing determination, and explicating that decision on the record." *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008).

**B.** **The district court erred by failing to explain its imposition of a supervised release term of life, especially given the mitigating circumstances on the record.**

**1.** **By failing to explain the reason for its sentence, the district court committed procedural error.**

The district court provided no explanation, much less a reasonable one, for why it imposed the highest possible supervised release term allowed by statute—life. And, as stated, "failing to adequately explain the chosen sentence" constitutes procedural error. *Gall*, 552 U.S. at 51. While it made a cursory reference to the § 3553(a) factors when imposing the imprisonment portion of the sentence, it was silent as to its reasoning for the life term of supervision, even after objection by defense counsel. A46-A48.

The lack of explanation in imposing such a harsh sentence—the most extreme allowed by law—also complicates appellate review. *Martin*, 520 F.3d at 92. A corollary of the broad discretion that district courts have in imposing sentence is "the respectful deference that appellate courts must accord district court's fact-intensive sentencing decisions." *Id.* (citing *Gall*, 552 U.S. at 50). Without said fact-intensive inquiry, this Court is unable to review the district court's decision for reasonableness,

even under an abuse-of-discretion standard. *Id.* And not only does "reasoned and case-specific explanation" for a sentence "facilitate appellate review," the district court is also required to do so by statute. *United States v. Pabón*, 819 F.3d 26 (1st Cir. 2016). Without any facts or explanation in support, the district court's imposition of a supervised release term of life was error.

### 2. The record before the court warranted a lower supervised release term.

The district court identified several factors to support a downwardly variant sentence of incarceration. A47-48. This downward variance makes the court's imposition of the statutory maximum term of supervised release all the more confounding.

Indeed, the record shows that a lower term of supervised release would have been appropriate. For the same mitigating reasons that varied below the imprisonment guidelines, it should have imposed a lower supervised release term (which could have been as low as five years). *See* 18 U.S.C. § 3583(k). Mr. Ojeda has strong family ties and responsibilities and quickly accepted responsibility for his actions. A48. His family, especially his mother and grandmother, have provided him with unwavering support. A32. He was active in his community orienting

the youth regarding drug use prevention. *Id.* The PSR, which the district court acknowledged it reviewed prior to sentencing, notes that 11 character reference letters were provided on behalf of Mr. Ojeda, describing him as "respectful, honest, trustworthy, hardworking, loving, a good person and a man of faith." SA11, ¶ 58; A46.

As mentioned, *supra*, and argued by counsel below, Mr. Ojeda will be in his 60s, if not late 70s, when he is released. A58. And statistics show that older offenders are substantially less likely than younger offenders to recidivate following release.[11] Moreover, individuals with a criminal history of I and over aged 60 have only a 6.5% rate of recidivism. *Id.* Thus, a supervised release term of life, especially in light of the strict conditions Mr. Ojeda will be facing on supervision, was excessive given the facts on the record. Because the district court abused its discretion when it sentenced Mr. Ojeda to a life term of supervised release, with no support on the record, that portion of the sentence should be vacated.

---

[11] United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (December 7, 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

## CONCLUSION

For all the above reasons, the Court should vacate the district court's imposition of the term of supervised release of life. The case should be remanded for resentencing on a closed record with the instruction that the district court sentence Mr. Ojeda to a reasonable term of supervised release and that it impose its imprisonment sentence to run concurrently to Mr. Ojeda's subsequent state sentence. We also respectfully ask the Court to vacate the imposition of the $5,000 special monetary assessment and the supervised release term of life.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on May 24, 2024.

RACHEL BRILL
Federal Public Defender

FRANCO L. PÉREZ-REDONDO
Assistant Federal Public Defender
Supervisor, Appellate Unit

s/JOANNA LEROY
Assistant Federal Public Defender
First Circuit Bar No. 1204668
241 F.D. Roosevelt Ave.
San Juan, Puerto Rico 00918-2441
Telephone: (787) 281-4922
Fax: (787) 281-4899
Email: Joanna_LeRoy@fd.org

## CERTIFICATE OF COMPLIANCE

**1.** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,535 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

**2.** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using a 14-point Century Schoolbook font.

In San Juan, Puerto Rico, on May 24, 2024.

**s/JOANNA LEROY**
Assistant Federal Public Defender
First Circuit Bar No. 1204668
Email: Joanna_LeRoy@fd.org

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and exact copy of this Appellant's

Opening Brief was filed with the Clerk of Court using the CM/ECF

system which will send notification to all parties of record, including

counsel for the appellee:

> Mariana E. Bauzá-Almonte
> Assistant U.S. Attorney
> Torre Chardón, Suite 1201
> 350 José Chardón Ave.
> San Juan, P.R. 00918

In San Juan, Puerto Rico, on May 24, 2024.

> **s/JOANNA LEROY**
> Assistant Federal Public Defender
> First Circuit Bar No. 1204668
> Email: Joanna_LeRoy@fd.org

# In the United States Court of Appeals for the First Circuit

_____

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**LUIS ENRIQUE OJEDA-PEÑA,**
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 23-011-1 (FAB)
Hon. Francisco A. Besosa, U.S. District Judge

_____

## ADDENDUM TO APPELLANT'S OPENING BRIEF

_____

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

241 F.D. Roosevelt Ave.
San Juan, PR 00918
T: (787) 281-4922
F: (787) 281-4899
E: Joanna_LeRoy@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appellate Unit

**JOANNA LEROY**
Assistant Federal Public Defender

Attorneys for Defendant-Appellant
**LUIS OJEDA-PEÑA**

## INDEX

Judgment in DPR Case No. 23-cr-011-FAB-1
  Docket No. 34 (Sept. 6, 2023) ............................................... 1-7

State Court Judgment ............................................................ 8-9

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Luis Enrique OJEDA-PENA (1) | Case Number:  3:23-cr-00011-01(FAB) |
| | USM Number:  40627-510 |
| | AFPD Edwin A. Mora-Rolland |
| | *Defendant's Attorney* |

## THE DEFENDANT:

☑ pleaded guilty to count(s)  ___Count Two (2) of the Indictment on 6/6/2023.___

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☐ was found guilty on count(s) _____
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 2251(a) | Attempted Production of Child Pornography | 8/2/2022 | Two (2) |

     The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)  ___1___  ☑ is  ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

_____9/6/2023_____
Date of Imposition of Judgment

_____/S/ FRANCISCO A. BESOSA_____
Signature of Judge

_____Francisco A. Besosa, Senior U.S. District Judge_____
Name and Title of Judge

_____9/6/2023_____
Date

**Addendum 1**

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___7___

DEFENDANT:   Luis Enrique OJEDA-PENA (1)
CASE NUMBER:   3:23-cr-00011-01(FAB)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Three hundred (300) months.

☑ The court makes the following recommendations to the Bureau of Prisons:
   The defendant be provided of any available vocational training courses, courses in English as second language, the 500-hour drugs/alcohol treatment program if he qualifies, sex offender and mental health treatment and program. The Court recommends the defendant be designated to a facility near Houston, TX.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Addendum 2

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    7

DEFENDANT:   Luis Enrique OJEDA-PENA (1)
CASE NUMBER:   3:23-cr-00011-01(FAB)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

For the rest of his life.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     ☐ The above drug testing condition is suspended, based on the court's determination that you
        pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
        restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
        directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
        reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached
page.

**Addendum 3**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ____4____ of ____7____

DEFENDANT:  Luis Enrique OJEDA-PENA (1)
CASE NUMBER:  3:23-cr-00011-01(FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____   Date  _____

**Addendum 4**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT:  Luis Enrique OJEDA-PENA (1)
CASE NUMBER:  3:23-cr-00011-01(FAB)

## ADDITIONAL SUPERVISED RELEASE TERMS

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. He shall not have personal contact, or contact by mail, by telephone, through a computer or any other electronic device or third parties, with the minor victim, and shall not have unsupervised contact with any other related or non-related person below the age of 18 unless determined to be appropriate by a treatment provider and the Probation Officer. The only exception relies in the incidental contact in normal commercial life.

3. He shall consent to the installation of computer monitoring software or systems that will enable the Probation Officer, or his/her designee, to monitor and filter any internet accessing and data storage device, owned or controlled by Mr. Ojeda. Accordingly, to ensure compliance with the computer monitoring condition, Mr. Ojeda must allow the probation officer to conduct initial and periodic unannounced searches or examinations on any computer or electronic device, owned or controlled by him, and subject the computer to monitoring, prior to or after the installation of the monitoring software. These searches or examinations shall be conducted to determine whether the computer or device contains any prohibited data prior to the installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. The searches and examinations may result in retrieval and copying of all data from the device and any internal or external peripherals, and may involve the removal of the equipment for the purpose of conducting a more thorough inspection. Additionally, Mr. Ojeda shall immediately notify the Probation Office upon registration for access to any website or internet service that allows for: communication with other users, uploading and downloading of files, posting of any material, etc. Notification shall include the site address, username, passwords, pseudonyms and logons, including, but not limited to, social networks, cloud storage services, message boards, etc. Mr. Ojeda shall warn any other person who uses these computers or electronic devices that they may be subject to searches and examinations pursuant to this condition. Failure to consent may be grounds for revocation of supervised release. Mr. Ojeda shall pay for the cost of the monitoring service at the prevailing rate.

4. He shall not engage in a specified occupation, business, or profession bearing a reasonable direct relationship to the conduct constituting his offense. Specifically, Mr. Ojeda shall not work with persons under the age of 18, or hold a job that gives him authority over or access to potential victims, except in incidental contact in normal commercial life. Any employment must be notified to the Probation Officer in advance; the Probation Officer will make an assessment of the job placement and set employment restrictions based on the Sex Offender Management Procedures Manual. Mr. Ojeda shall consent to third party disclosure to any employer or potential employer.

5. He shall not participate in any volunteer activity or be involved in any children's or youth organization or any group that would bring him into close contact with a person or persons under the age of 18, unless with prior approval of the Probation Officer.

6. He shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. Sec. 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any sex offender registration agency of any state, U.S. Territory or Indian Tribe, in which he may reside, work, is a student, carry on a vacation, or was convicted of a qualifying offense.

7. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

8. He shall submit to an initial polygraph examination, and a subsequent maintenance testing intervals, to be determined by the Probation Officer, to assist in treatment planning, case monitoring, and with the requirements of his supervision or treatment program. Polygraph examination shall be conducted at least once annually, but may be conducted on a continuous basis commensurate with risk, as determined by the Probation Officer.

9. He shall submit himself and his property, house, residence, vehicles, papers and effects, computers and other electronic communication or data storage devices or media to a search, at any time, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer, but only in the lawful discharge of the supervision functions of the probation officer, who must have a reasonable suspicion of unlawful conduct or of a violation of a condition of supervised release. The Probation Officer may seize any electronic communication or electronic device or medium which will be subject to additional forensic investigation or analysis. Failure to submit to a search or permit a seizure may be grounds for revocation of supervised release. Mr. Ojeda shall warn any other resident or occupant that his premises and residence may be subject to searches pursuant to this condition.

10. He shall undergo a sex-offense-specific evaluation and participate in a sex offender treatment and mental health treatment programs arranged by the Probation Officer. Mr. Ojeda shall abide by all rules, requirements, and conditions of the sex offender and mental health treatment programs and any testing available as approved by the Court. He shall waive his right of confidentiality in any records for sex offender and mental health assessment and treatment, and sign any necessary release form required to obtain the records to allow the Probation Officer to review and adjust Mr. Ojeda's course of treatment and progress with the treatment provider. Mr. Ojeda shall contribute to the costs of all those services, based on his ability to pay or availability of payments by third parties.

11. He shall not use controlled substances unlawfully and shall submit to a drug test within fifteen (15) days of release from imprisonment. After his release, he shall submit to random drug testing, not less than three (3) samples during the supervision period but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the U.S. Probation Office, as has been approved by this Court.

12. He shall participate in an approved substance abuse monitoring and program to determine if treatment is necessary. If deemed necessary, the treatment will be arranged by the Probation Officer in consultation with the treatment provider. Mr. Ojeda shall contribute to the cost of those services in an amount arranged by the Probation Officer based on his ability to pay or availability of payments by third-parties.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 5 — Criminal Monetary Penalties

Judgment — Page   6   of   7

DEFENDANT: Luis Enrique OJEDA-PENA (1)
CASE NUMBER: 3:23-cr-00011-01(FAB)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ 0.00 | $ | $ 5,000.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement   $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

  ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Addendum 6

Judgment — Page   7   of   7

DEFENDANT:  Luis Enrique OJEDA-PENA (1)
CASE NUMBER:  3:23-cr-00011-01(FAB)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __5,100.00__ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
    pursuant to the forfeiture provision at paragraph 20 of the Plea Agreement.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Addendum 7

EL PUEBLO DE PUERTO RICO

Vs.

LUIS E. OJEDA PEÑA
CONFINADO
Núm. Querella: 2022-01-362-02862
Fecha Nacimiento: ███████ 1985
Lugar Nacimiento: Fajardo, PR
Sexo: M
Seguro Social: XXX-XX-6360
Dirección: Calle ███████,
███████, Fajardo, PR 00738
Lic. Conducir: ███████ (chofer)

CRIM. NÚM: K IS2022G0058 al 0060

POR: ART. 130A C.P. Grave (2012) (3cs)
Reclasificados a:
ART. 133A C.P. (3cs)

CRIM. NÚM.: K IS2022G0061
POR: ART. 133A C.P. Grave (2012)

CRIM. NÚM.: K LE2022G0369
POR: ART. 59 LEY 246 Grave (2011)

**SENTENCIA**

Llamado el caso de epígrafe en el día de hoy para pronunciamiento de sentencia, comparecen en corte abierta EL PUEBLO DE PUERTO RICO representado por las **Fiscales Valeria Malavé Cosme e Irisel Collazo Nazario** y el acusado de epígrafe, **Luis E. Ojeda Peña**, asistido por el **Lic. Eduardo Beale Targa**.

El acusado hizo alegación de culpabilidad por **cuatro (4) cargos de Artículo 133A del Código Penal y por un (1) cargo de Artículo 59 Ley 246** en sesión pública del 19 de abril de 2023 y solicitó se dictara Sentencia en su contra. El Tribunal aceptó la alegación de culpabilidad y falló declarándole culpable por confesión de **cuatro (4) cargos de Artículo 133A C.P. Ley 54 y un (1) cargo por Artículo 59 Ley 246**, luego de determinar que la misma se hizo libre y voluntariamente con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación.

El Tribunal informó al acusado de la naturaleza del cargo, sobre las alegaciones de su defensa, y sobre el fallo dictado y le preguntó si tenía alguna causa legal que aducir para demostrar que no procedía dictar sentencia.

No existiendo tal causa legal, el Tribunal pronuncia su sentencia en la siguiente forma: Que, habiendo hecho el acusado alegación de culpabilidad y declarado convicto por los delitos de epígrafe, el Tribunal en cumplimiento de su fallo del día 19 de abril de 2023, **lo condena a la pena cárcel:**

**Artículo 133A Código Penal (4cs) - quince (15) años en cada caso, concurrentes entre sí.**

**Artículo 59 Ley 246 – diez (10) años, concurrentes con los anteriores, para un total de quince (15) años de cárcel.**

**Se impone en cada caso el pago $300.00 de la Pena Especial que dispone la Ley 183. Se concede el término de treinta (30) días para el pago.**

Addendum 8

Se ordena someterse a examen de A.D.N. para ser incluido en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, cumpliendo con la Ley 266-2004, según enmendada.

Se advierte al Sr. Luis E. Ojeda Peña sobre su obligación de notificar cualquier cambio de dirección al SIJC-PR del Departamento de Justicia y actualizar su información anualmente en el Negociado de la Policía de Puerto Rico, aun cuando esta no haya cambiado.

**Se ordena que el sentenciado sea trasladado sin demora al cuidado del funcionario de la Institución Penal de la Administración de Corrección correspondiente y sea detenido por éste hasta que la Sentencia se hubiere cumplido.**

**NOTIFÍQUESE, además, al SIJC-PR al Departamento de Justicia.**

En San Juan, Puerto Rico, a 13 de septiembre de 2023.

**ALEXANDRA RIVERA SÁEZ**
Juez Superior