# In the United States Court of Appeals for the First Circuit

————————————

**UNITED STATES OF AMERICA**,
*Appellee,*

v.

**LUIS ENRIQUE OJEDA-PEÑA**,
*Defendant-Appellant.*

————————————

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 23-011-1 (FAB)
Hon. Francisco A. Besosa, U.S. District Judge

---

## APPENDIX TO APPELLANT'S OPENING BRIEF

---

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

241 F.D. Roosevelt Ave.
San Juan, PR 00918
T: (787) 281-4922
F: (787) 281-4899
E: Joanna_LeRoy@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appellate Unit

**JOANNA LEROY**
Assistant Federal Public Defender

Attorneys for Defendant-Appellant
**LUIS ENRIQUE OJEDA-PEÑA**

# INDEX

Docket Report,
    DPR Case No. 23-cr-011-FAB-1 ............................................................ 1-7

Notice of Appeal,
    Docket No. 36 (Sept. 14, 2023) ............................................................ 8

Indictment,
    Docket No. 3 (Jan. 12, 2023) ............................................................ 9-10

Plea Agreement,
    Docket No. 28 (June 6, 2023) ............................................................ 11-24

Luis Ojeda-Peña's Sentencing Memorandum,
    Docket No. 31 (August 30, 2023) ............................................................ 25-34

Transcript of Sentencing Hearing,
    Docket No. 39 (Dec. 21, 2023) ............................................................ 35-61

CERTIFICATE OF SERVICE

# United States District Court
## District of Puerto Rico (San Juan)
## CRIMINAL DOCKET FOR CASE #: 3:23-cr-00011-FAB-1

Case title: USA v. Ojeda-Pena

Date Filed: 01/12/2023

Date Terminated: 09/06/2023

Assigned to: Senior Judge Francisco A. Besosa

Appeals court case number: 23-1804

**Defendant (1)**

**Luis Enrique Ojeda-Pena**
*TERMINATED: 09/06/2023*

represented by **Federal Public Defender Office**
241 Franklin D Roosevelt
3rd Floor
San Juan, PR 00918
787-281-4922
Fax: 787-281-4899
Email: prx_notifications@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Federal Public Defender

**Edwin A. Mora-Rolland**
Federal Public Defender's Office
Patio Gallery Building
241 Franklin D. Roosevelt Ave.
Hato Rey, PR 00918-2441
787-281-4922
Fax: 787-281-4899
Email: edwin_mora@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Federal Public Defender

**Pending Counts**

18:2251(a) AND (e): ATTEMPTED
PRODUCTION OF CHILD
PORNOGRAPHY
(2)

**Disposition**

IMPR: Three hundred (300) months; SRT:
For life; SMA: $100.00; JVTAA: $5,000.00;
No Fine; FORFEITURE pursuant to the
Plea Agreement.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

**Disposition**

Appendix 1

18:2422(b)(2): COERCION AND
ENTICEMENT OF A MINOR
(1)

DISMISSED.

**Highest Offense Level (Terminated)**
Felony

**Complaints**                                          **Disposition**
None

---

**Interested Party**
**US Probation Office**

---

**Plaintiff**
**USA**                                    represented by   **Daynelle Maria Alvarez-Lora**
United States Attorneys Office
District of Puerto Rico
Torre Chardon Suite 1201
350 Chardon Ave
San Juan, PR 00918
787-282-1817
Fax: 787-771-4050
Email: daynelle.m.alvarez@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: AUSA Designation*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/12/2023 | 1 | MOTION to Seal Case by USA as to Luis Enrique Ojeda-Pena (1). (ab) (Entered: 01/12/2023) |
| 01/12/2023 | 2 | ORDER granting 1 Motion to Seal Case as to Luis Enrique Ojeda-Pena (1). Signed by US Magistrate Judge Marshal D. Morgan on 1/12/2023. (ab) (Entered: 01/12/2023) |
| 01/12/2023 | 3 | INDICTMENT as to Luis Enrique Ojeda-Pena (1) count(s) 1, 2. (ab) (Additional attachment(s) added on 1/12/2023: # 1 NPV Indictment) (ab). (Entered: 01/12/2023) |
| 01/12/2023 | 4 | Minute Entry for proceedings held before US Magistrate Judge Marshal D. Morgan: Return of Indictment by Grand Jury as to Luis Enrique Ojeda-Pena (1) held on 1/12/2023. Arrest warrant to be issued. (ab) (Entered: 01/12/2023) |
| 01/12/2023 | 5 | *RESTRICTED* Arrest Warrant Issued by US Magistrate Judge Marshal D. Morgan in case as to Luis Enrique Ojeda-Pena (1). (ab) (Entered: 01/12/2023) |
| 01/17/2023 | 6 | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Luis Enrique Ojeda-Pena (1). Responses due by 1/31/2023. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Text of Proposed Order)(Alvarez-Lora, Daynelle) (Entered: 01/17/2023) |

| 01/18/2023 | 7 | ORDER re 6 Motion for Writ of Habeas Corpus ad prosequendum as to Luis Enrique Ojeda-Pena (1): GRANTED. Writ to be issued by the Clerk. Signed by Senior Judge Francisco A. Besosa on 01/18/2023. (brc) (Entered: 01/18/2023) |
|---|---|---|
| 01/19/2023 | 8 | Writ of Habeas Corpus ad Prosequendum Issued as to Luis Enrique Ojeda-Pena (1) (om) (Entered: 01/19/2023) |
| 01/20/2023 | | Arrest of Luis Enrique Ojeda-Pena (1). (cmd) (Entered: 01/26/2023) |
| 01/20/2023 | 10 | Minute Entry for proceedings held before US Magistrate Judge Giselle Lopez-Soler: Initial Appearance as to Luis Enrique Ojeda-Pena (1) held on 1/20/2023. Present were AUSA Jawayria Auchter and AFPD Carmen Coral Rodriguez. The defendant was under custody, present in court and assisted by the Court Interpreter. The defendant was provided with a copy of the Indictment and advised as to the charges contained therein, the minimum and maximum applicable statutory penalties, and his rights. After reviewing the CJA-23 form filed by the defendant, the Court deemed it appropriate to appoint counsel. The defendant will be represented by the Federal Public Defender. Pursuant to the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020) and Rule 5(f) of the Federal Rules of Criminal Procedure, the United States is reminded of its obligation to disclose in a timely manner all exculpatory evidence to the defendant[s], that is, all evidence that is favorable to the defendant[s] or tends to cast doubt on the United States case, as required by Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Failure to comply with this order may result in consequences, including, but not limited to, the reversal of any conviction, the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, and/or sanctions by the Court. The Government did not move for detention. The Court ordered the defendant temporarily detained pending further proceedings. **Arraignment/Bail is set for 2/2/2023 at 9:30 AM in Courtroom 11 before US Magistrate Judge Giselle Lopez-Soler.** (Court Reporter DCR Courtroom 11.) Hearing set for 4:47 PM. Hearing held at 4:47 PM. Hearing ended at 4:50 PM. Interpreter Ani Navarro. (cmd) (Entered: 01/26/2023) |
| 01/20/2023 | 11 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Luis Enrique Ojeda-Pena (1). Signed by US Magistrate Judge Giselle Lopez-Soler on 1/20/23. (cmd) (Entered: 01/26/2023) |
| 01/20/2023 | 12 | *RESTRICTED* CJA 23 Financial Affidavit by Luis Enrique Ojeda-Pena (1). (cmd) (Entered: 01/30/2023) |
| 01/20/2023 | 13 | ORDER scheduling detention hearing as to Luis Enrique Ojeda-Pena (1). Defendant is TEMPORARILY DETAINED pending hearing. Signed by US Magistrate Judge Giselle Lopez-Soler on 1/20/2023. (cmd) (Entered: 01/30/2023) |
| 01/24/2023 | 9 | NOTICE OF ATTORNEY APPEARANCE: Edwin A. Mora-Rolland appearing for Luis Enrique Ojeda-Pena (1) (ab) (Entered: 01/24/2023) |
| 02/01/2023 | 14 | ***SELECTED PARTIES***Notice of Disclosure of Pretrial Services Report as to Luis Enrique Ojeda-Pena (1). Pretrial Services Reports are made available to Defense Counsel and the Government. The Pretrial Reports are not public record, are not to be produced or disclosed to any other party, and shall remain confidential as provided in Title 18 U.S.C. 3153(c)(1), by USA, US Probation Office, Luis Enrique Ojeda-Pena (Abruna-Ortiz, Elisa) (Entered: 02/01/2023) |
| 02/02/2023 | 15 | Minute Entry for proceedings held before US Magistrate Judge Giselle Lopez-Soler: Arraignment/Bail as to Luis Enrique Ojeda-Pena (1) Count 1,2 held on 2/2/2023. Present were AUSA Daynelle Alvarez and AFPD Edwin Mora and USPO Emanuel Bravo. The defendant was under custody, present in court and assisted by the Court Interpreter. The defendant was found competent to understand the proceedings. He waived the reading of |

| | | the Indictment and entered a plea of not guilty as to all counts contained therein. The Government has 7 days to produce discovery and the defense has 14 days thereafter to file motions. Case is referred to U.S. District Judge Francisco A. Besosa for further proceedings. Pursuant to the Due Process Protections Act, the Court ordered the United States to disclose in a timely manner all exculpatory evidence to the defendant[s] pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Failure to comply with this order may result in consequences, including, but not limited to, the reversal of any conviction, the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, and/or sanctions by the Court. As to bail, the Government moved for detention. Defense counsel did not seek conditions of release at this time. The Court ordered defendant detained pending further proceedings. The Court ordered the defendant detained. Findings made on the record. Order to issue. (Court Reporter DCR Courtroom 11.) Hearing set for 9:30 AM. Hearing held at 9:45 AM. Hearing ended at 9:49 AM. Interpreter Sonia Crescioni. (cmd) (Entered: 02/02/2023) |
|------------|----|---|
| 02/02/2023 | 16 | ***EX-PARTE** NOTICE to MDC as to Luis Enrique Ojeda-Pena (1) as to the defendant's medical condition. Email sent to MDC. Signed by US Magistrate Judge Giselle Lopez-Soler on 2/2/2023. (cmd) Modified on 2/3/2023 add docket text "Ex-parte". Document replaced to correct case number (ab). (Entered: 02/02/2023) |
| 02/02/2023 | 17 | ***VACATED AS PER D.E. #22*** SCHEDULING ORDER as to Luis Enrique Ojeda-Pena (1). **Discovery due by 2/17/2023. Change of plea motion OR Proposed voir dire and preliminary instructions due by 3/30/2023. Pretrial Motions due by 3/9/2023. Jury Trial set for 4/10/2023 09:00 AM in OSJ Courtroom 6 - 1st Floor before Senior Judge Francisco A. Besosa. Status Conference set for 3/10/2023 09:00 AM in OSJ Courtroom 6 - 1st Floor before Senior Judge Francisco A. Besosa.** Signed by Senior Judge Francisco A. Besosa on 2/2/2023.(om) Modified on 3/13/2023 (ab). (Entered: 02/02/2023) |
| 02/02/2023 | 18 | *RESTRICTED* Arrest Warrant w/ 8 Writ of Habeas Corpus ad Prosequendum Returned Executed on 1/20/2023 in case as to Luis Enrique Ojeda-Pena (1). (ab) (Entered: 02/03/2023) |
| 02/02/2023 | 19 | ORDER OF DETENTION PENDING TRIAL as to Luis Enrique Ojeda-Pena (1). Signed by US Magistrate Judge Giselle Lopez-Soler on 2/2/23. (hgp) (Entered: 02/06/2023) |
| 02/28/2023 | 20 | MOTION for Extension of Time by USA as to Luis Enrique Ojeda-Pena (1). Responses due by 3/14/2023. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Alvarez-Lora, Daynelle) (Entered: 02/28/2023) |
| 02/28/2023 | 21 | ORDER re 20 Motion for Extension of Time as to Luis Enrique Ojeda-Pena (1): GRANTED. **Any pretrial motion shall be filed no later than March 27, 2023.** Signed by Senior Judge Francisco A. Besosa on 02/28/2023. (brc) (Entered: 02/28/2023) |
| 03/10/2023 | 22 | Minute Entry for proceedings held before Senior Judge Francisco A. Besosa: Status Conference as to Luis Enrique Ojeda-Pena (1) held on 3/10/2023. The United States was represented by AUSA Luis Angel Valentin. The defendant was represented by AFPD John Connors who was substituting AFPD Edwin A. Mora-Rolland. The United States provided discovery on February 14, 2023. The defense requested additional discovery. The United States will schedule a meeting with the defendant to discuss plea negotiations. This defendant has a pending case at state level, same victim in this case. Counsel for the defendant informed that cellphone extracted data, recordings of defendant's interview and medical records are pending as discovery and requested that jury trial be vacated. The Court after hearing the parties, set the following. **Request that jury trial be vacated was granted. Scheduling order at ECF no. 17 was vacated. Status Conference set for April 14, 2023 at 9:00 AM in OSJ Courtroom 6 - 1st Floor.** (Court Reporter Joe |

| | | |
|---|---|---|
| | | Reynosa.)Hearing set for 09:00. Hearing held at 09:30. Hearing ended at 09:33. (om) (Entered: 03/10/2023) |
| 04/14/2023 | 23 | Minute Entry for proceedings held before Senior Judge Francisco A. Besosa: Status Conference as to Luis Enrique Ojeda-Pena (1) held on April 14, 2023. The United States was represented by AUSA Daynelle Maria Alvarez-Lora. The defendant was represented by AFPD Edwin A. Mora-Rolland. Parties informed the status of the case. The United States provided discovery but pending the cell phone extracted data that must be reviewed during an inspection due to the nature of the case. Inspection pending to be coordinated. The defense made an offer, and the United States replied with a pre-approved counteroffer. Additional time requested for the inspection be completed and for counsel Mora-Rolland to discuss the terms of the plea offer made with his client. The Court after having heard the parties, set the following. **Change of Plea Hearing set for May 19, 2023 at 9:00 AM in OSJ Courtroom 6 - 1st Floor.** (Court Reporter Lisa O'Brien.) Hearing set for 09:00. Hearing held at 11:25. Hearing ended at 11:28. (om) (Entered: 04/20/2023) |
| 05/17/2023 | 24 | ORDER as to Luis Enrique Ojeda-Pena (1): **Change of Plea Hearing reset for 5/25/2023 at 9:00 AM in OSJ Courtroom 6 - 1st Floor.** Signed by Senior Judge Francisco A. Besosa on 5/17/2023.(om) (Entered: 05/17/2023) |
| 05/24/2023 | 25 | MOTION to Continue *Change of Plea Hearing* by Luis Enrique Ojeda-Pena (1). Responses due by 6/7/2023. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Mora-Rolland, Edwin) (Entered: 05/24/2023) |
| 05/24/2023 | 26 | ORDER in re 25 Motion to Continue as to Luis Enrique Ojeda-Pena (1). GRANTED. **Change of Plea Hearing reset for June 6, 2023 at 9:00 AM in OSJ Courtroom 6 - 1st Floor.** Signed by Senior Judge Francisco A. Besosa on 5/24/2023. (om) (Entered: 05/24/2023) |
| 06/06/2023 | 27 | ***EX-PARTE***PLEA AGREEMENT SUPPLEMENT as to Luis Enrique Ojeda-Pena (1). (om) (Entered: 06/06/2023) |
| 06/06/2023 | 28 | PLEA AND FORFEITURE AGREEMENT as to Luis Enrique Ojeda-Pena (1) (om) (Entered: 06/06/2023) |
| 06/06/2023 | 29 | Minute Entry for proceedings held before Senior Judge Francisco A. Besosa. Change of plea hearing as to Luis Enrique Ojeda-Pena (1) held on June 6, 2023. The United States was represented by AUSA Daynelle Maria Alvarez-Lora. The defendant was represented by AFPD Edwin A. Mora-Rolland. The defendant was present in court, under custody and he was assisted by certified interpreter Denisse Serrano. The defendant was found competent to plea. Plea and forfeiture agreement and plea supplement filed in open court. Plea and forfeiture agreement filed in open court, will remain under advisement until sentence. Plea supplement filed in open court, will remain filed ex-parte. The defendant was advised of the maximum penalties he is facing, constitutional rights, consequences of waiving his constitutional rights and the applicable statutory guidelines. Plea of Guilty entered by defendant Luis Enrique Ojeda-Pena (1) as to count 2 of the Indictment. A Pre-Sentence Report shall be prepared by the U.S. Probation Office and shall be filed at least 35 days prior to sentencing. **Sentencing Hearing set for 9/6/2023 at 9:00 AM in OSJ Courtroom 6 - 1st Floor.** (Court Reporter Lisa O'Brien.)Hearing set for 09:00. Hearing held at 10:27. Hearing ended at 10:50. Interpreter Denisse Serrano. (om) (Entered: 06/06/2023) |
| 08/02/2023 | 30 | ***SELECTED PARTIES*** NOTICE of Disclosure of PSR as to Luis Enrique Ojeda-Pena (1). Pursuant to Local Rule 132, the U.S. Probation Officer makes disclosure of the presentence report for the defendant of record. According to said rule, any inaccuracies or discrepancies should be reported to the Probation Officer within 14 days from disclosure of the document. Since the presentence report is a Court Document, its contents must not be |

| | | |
|---|---|---|
| | | recorded or otherwise disseminated to third parties in any manner, by USA, US Probation Office, Luis Enrique Ojeda-Pena. (Matos, Natalia) (Entered: 08/02/2023) |
| 08/30/2023 | 31 | SENTENCING MEMORANDUM by Luis Enrique Ojeda-Pena (1) (Mora-Rolland, Edwin) (Entered: 08/30/2023) |
| 08/30/2023 | 32 | ***SELECTED PARTIES*** NOTICE of Filing of Addendum to the PSR as to Luis Enrique Ojeda-Pena (1). The addendum to the presentence investigation report has been filed in compliance with Rule 32 of the Federal Rules of Criminal Procedure by USA, US Probation Office, Luis Enrique Ojeda-Pena (Matos, Natalia) (Entered: 08/30/2023) |
| 09/06/2023 | 33 | Minute Entry for proceedings held before Senior Judge Francisco A. Besosa: A Sentencing Hearing was held on 9/6/2023 for Luis Enrique Ojeda-Pena (1). Present: AUSA Linet Suarez, AFPD Edwin Mora, and USPO Natalia Matos. The defendant was present, under custody and assisted by a certified court interpreter. AFPD Mora began by providing mitigating factors to be considered by the Court and requested a sentence of 210 months of imprisonment be imposed, based on the Plea Agreement. AUSA Suarez also requested a sentence of 210 months of imprisonment be imposed. Defendant's allocution was heard. The Victim's mother also had the opportunity to be heard. The Court after having heard the parties, imposed sentence as follows: As to Count 2 of the Indictment, IMPR: Three hundred (300) months; SRT: For the rest of his life; SMA: $100.00; JVTAA: $5,000.00; No Fine; FORFEITURE pursuant to the Plea Agreement. All terms and conditions are specified in the judgment. The defendant was advised as to his right to appeal, etc. AFPD Mora objected the sentence imposed and argued as to the defendant's financial litigation. The Court noted the defense's objection. Upon the Government's request, Count One (1) was dismissed. (Court Reporter Lisa O'Brien.) Hearing set for 09:00. Hearing held at 10:12. Hearing ended at 11:01. Interpreter Ana Navarro. (mig) (Entered: 09/13/2023) |
| 09/06/2023 | 34 | JUDGMENT as to Luis Enrique Ojeda-Pena (1): Count 1, DISMISSED.; Count(s) 2, IMPR: Three hundred (300) months; SRT: For life; SMA: $100.00; JVTAA: $5,000.00; No Fine; FORFEITURE pursuant to the Plea Agreement. Signed by Senior Judge Francisco A. Besosa on 9/6/2023. (mig) (Entered: 09/13/2023) |
| 09/06/2023 | 35 | ***NOT FOR PUBLIC DISCLOSURE***Statement of Reasons as to Luis Enrique Ojeda-Pena (1). Signed by Senior Judge Francisco A. Besosa on 9/6/2023. (mig) (Entered: 09/13/2023) |
| 09/14/2023 | 36 | NOTICE OF APPEAL by Luis Enrique Ojeda-Pena (1) as to 34 Judgment,<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (Mora-Rolland, Edwin) (Entered: 09/14/2023) |
| 09/26/2023 | 37 | Certified and Transmitted Record on Appeal as to Luis Enrique Ojeda-Pena (1) to US Court of Appeals re 36 Notice of Appeal - Final Judgment [Docket Entries 34 & 36] (mcm) (Entered: 09/26/2023) |
| 09/27/2023 | 38 | USCA Case Number 23-1804 for 36 Notice of Appeal - Final Judgment, filed by Luis Enrique Ojeda-Pena (1). (mcm) (Entered: 09/27/2023) |
| 12/21/2023 | 39 | ***SELECTED PARTIES***Transcript of Sentencing Hearing as to Luis Enrique Ojeda-Pena (1) held on 9/6/2023, before Judge Francisco A. Besosa. Court Reporter/Transcriber Lisa O'Brien, Telephone number 708-284-0021. COA Number: 23-1804. NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. The policy is located at |

| | | |
|---|---|---|
| | | www.prd.uscourts.gov. Redaction Request due 1/11/2024. Redacted Transcript Deadline set for 1/22/2024. (lo) (Entered: 12/21/2023) |
| 12/22/2023 | 40 | ***SELECTED PARTIES***Transcript of Change of Plea Hearing as to Luis Enrique Ojeda-Pena (1) held on 6/6/2023, before Judge Francisco A. Besosa. Court Reporter/Transcriber Lisa O'Brien, Telephone number 708-284-0021. COA Number: 23-1804. NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. The policy is located at www.prd.uscourts.gov. Redaction Request due 1/12/2024. Redacted Transcript Deadline set for 1/22/2024. Release of Transcript Restriction set for 3/21/2024. (lo) (Entered: 12/22/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/23/2024 14:17:00 | | |
| **PACER Login:** | edwinmora | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cr-00011-FAB |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

Appendix 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
    Plaintiff,

        v.                       CRIMINAL NO.  23-011 (FAB)

LUIS ENRIQUE OJEDA-PENA,
    Defendant.

**NOTICE OF APPEAL**

TO THE HONORABLE COURT:

    Notice is hereby given by Mr. Luis Enrique Ojeda-Pena, the defendant herein, that he respectfully appeals to the United States Court of Appeals for the First Circuit from the Judgment entered against him on September 13, 2023 (D.E. # 34), by Hon. Francisco A. Besosa, Senior Judge for the United States District Court for the District of Puerto Rico.

    **I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

    RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 14th day of September 2023.

**HECTOR L. RAMOS-VEGA**
**Interim Federal Public Defender**
**District of Puerto Rico**

*S / Edwin A. Mora-Rolland*
Assistant Federal Public Defender
USDC-PR 304603
241 F.D. Roosevelt Ave.
Hato Rey, P.R. 00918-2441
(787) 281-4922/ Fax (787) 281-4899
E-mail: Edwin_Mora@fd.org

Appendix 8

RECEIVED AND FILED

CLERK'S OFFICE USDC PR

2023 JAN 12 PM12:51

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br><br>v.<br><br><br>**LUIS ENRIQUE OJEDA PENA,**<br>Defendant. | <u>**INDICTMENT**</u><br><br>CRIMINAL NO. 23- 011 (FAB)<br><br>**VIOLATIONS:**<br>18 U.S.C. § 2422(b)(2),<br>18 U.S.C. § 2251(a).<br><br>**TWO COUNTS** |

**THE GRAND JURY CHARGES:**

<u>**COUNT ONE**</u>
**Coercion and Enticement of a Minor**
(Title 18, <u>United States Code</u>, Section 2422(b)(2))

From on or about July 9, 2022, through on or about August 2, 2022, in the District of Puerto Rico, and within the jurisdiction of this Court, the defendant,

**LUIS ENRIQUE OJEDA PENA,**

did use a facility and means of interstate commerce, that is a cellular phone that was not manufactured in Puerto Rico, as well as internet instant text messaging services, to knowingly persuade, induce, entice, and coerce a minor, and attempted to do so, that is, a nine (9) year-old female, to engage in any sexual activity for which the defendant could be charged with a criminal offense under the laws of the United States of America and Puerto Rico. All in violation of Title 18, <u>United States Code</u>, Section 2422(b)(2).

1

Appendix 9

## COUNT TWO
### Attempted Production of Child Pornography
(Title 18, United States Code, Section 2251(a))

From on or about July 9, 2022, through on or about August 2, 2022, in the District of

Puerto Rico and elsewhere, the defendant,

### LUIS ENRIQUE OJEDA PENA,

did knowingly employ, use, persuade, induce, entice, and coerce a minor, and attempted to do so,

that is, a nine (9) year-old female, to engage in sexually explicit conduct for the purpose of

producing any visual depiction of such conduct, and the visual depiction was produced and

transmitted using materials that have been mailed, shipped, and transported in and affecting

interstate and foreign commerce. All in violation of Title 18, United States Code, Sections 2251(a)

and (e).

W. STEPHEN MULDROW
United States Attorney

TRUE BILL

Date: 12 JAN 2023

Jenifer Y. Hernandez Vega
Chief, Child Exploitation and
Immigration Unit

Daynelle Alvarez Lora
Assistant U.S. Attorney

2

Appendix 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

LUIS ENRIQUE OJEDA PEÑA
Defendant.

CRIMINAL NO. 23-11 (FAB)

PLEA AND FOFEITURE AGREEMENT

**TO THE HONORABLE COURT:**

The United States of America, Defendant, LUIS ENRIQUE OJEDA PENA, and

Defendant's counsel, Edwin Mora, Esq., pursuant to Federal Rule of Criminal Procedure

11(c)(1)(B), state that they have reached a Plea and Forfeiture Agreement, the terms and

conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

The defendant agrees to plead guilty to Count Two of the Indictment.

Count Two of the Indictment charges that from on or about July 9, 2022 through on

or about August 2, 2022, in the District of Puerto Rico and within the jurisdiction of this

Court, the defendant, **LUIS ENRIQUE OJEDA PENA,** did knowingly employ, use,

persuade, induce, entice, and coerce a minor, and attempted to do so, that is, a 9 year old

minor female, to engage in sexually explicit conduct for the purpose of producing any

visual depiction of such conduct, and the visual depiction was produced and transmitted

using materials that have been mailed, shipped, and transported in and affecting interstate

and foreign commerce, including a Samsung Galaxy cell phone. All in violation of Title 18, <u>United States Code</u>, Sections 2251(a) and (e).

## 2. Statutory Penalties

The statutory penalties for the offense charged in Count Two of the Indictment are a term of imprisonment of not less than fifteen years and not more than thirty years pursuant to 18 U.S.C. § 2251(e); a fine not to exceed two hundred and fifty thousand dollars pursuant to 18 U.S.C. § 3571(b)(3); a special monetary assessment of one hundred dollars per count of conviction, to be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013(a)(2)(A); an additional special assessment of $5,000.00 per count under 18 U.S.C. §3014; and a supervised release term of at least five years up to life, pursuant to 18 U.S.C. § 3583(k).

## 3. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

## 4. Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. Defendant agrees to execute and make

Appendix 12

available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

5. **Recommended Sentencing Guidelines Calculations**

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

| SENTENCING GUIDELINES CALCULATIONS- COUNT TWO | |
|---|---|
| Base Offense Level pursuant to U.S.S.G. §2G2.1(a) | 32 |
| Offense involved a minor who had not attained the age of twelve years U.S.S.G. §2G2.1 (b)(1)(A) | +4 |
| Offense involved the commission of a sexual act or sexual contact U.S.S.G. §2G2.1 (b)(2)(A) | +2 |
| The defendant was a parent or relative or the minor was otherwise in the custody, care or supervisory control of the defendant U.S.S.G. §2G2.1 (b)(5) | +2 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **37** |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life |

Appendix 13

### 6. Sentence Recommendation

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree to request a sentence of imprisonment equal to the lower end of the applicable sentencing guideline range, at a total offense level of 37 combined with defendant's criminal history category as determined by the Court; followed by a term of supervised release as mandated by law; to be served concurrently with the related state sentence in Criminal Nos. KIS2022G0058 through 0060, KLE2022G0369, KIS2022G0061.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

### 7. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for the Defendant.

### 8. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is 235 months or less, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

### 9.  No Further Adjustments or Departures

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 10.  Satisfaction with Counsel

Defendant is satisfied with counsel, Edwin Mora, Esq., and asserts that counsel has rendered effective legal assistance.



### 11.  Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent,

that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

## 12. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

## 13. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

## 14.  Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

## 15.  Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

## 16.  Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

## 17.  Potential Impact Upon Conviction-Registration Requirement

Defendant acknowledges that by pleading guilty and entering into this plea agreement, Defendant will be required to register as a "Sex Offender" pursuant to the Sex Offender Registration and Notification Act ("SORNA" or "the Act"), which was enacted under Title I of the *Adam Walsh Child Protection and Safety Act of 2006* (P.L. 109-248), codified at Title 18, *United States Code*, Section 2250 and Title 34, *United States Code*, Section 20911-20915.  As a registered Sex Offender, Defendant further understands that Defendant's status as a convicted sex offender, and related Information, will be made public. Defendant further acknowledges that Defendant may or may not be required to register for life.

Appendix 17

### 18.  Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 19.  Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

### 20.  Forfeiture Provision

Defendant agrees to waive and forgo any interests or claims and to forfeit to the United States any and all materials or property used or intended to be used in the possession and production of child pornography. Defendant shall forfeit the following items seized: Samsung Galaxy, Model A11, SM-A115A and iPhone 13, cell phones with corresponding SIM cards seized in relation to the defendant. All pursuant to Title 18, United States Code, Section 2253.

Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.  Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of

Appendix 18

the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise Defendant of this, pursuant to Rule 11(b)(1)(J), at the time Defendant's guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

Defendant, by agreeing to the forfeiture stated above, acknowledges that such forfeiture is not grossly disproportionate to the gravity of the offense conduct to which Defendant is pleading guilty.   Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.   The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs,

successors and assignees until the agreed forfeiture, including any agreed money judgment, is collected in full.

### 21. Restitution Provision

Defendant understands that there is mandatory restitution under 18 U.S.C. § 2259 that, for any conviction of an offense described in paragraphs (E)(1) or (2), is not less than $3,000.00 per victim.

Defendant agrees that any restitution ordered by the Court under 18 U.S.C. § 2259, the amount of restitution ordered by the Court shall include defendant's total offense conduct. Defendant agrees and understands that any payment schedule imposed by the Court is without prejudice to the United States to take all actions and take all remedies available to it to collect the full amount of the restitution. Defendant agrees that the restitution, restitution judgment, payment provisions, and collection actions of this plea agreement are intended to, and will, survive defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. Defendant further agrees that any restitution collected and/or distributed will survive him, notwithstanding the abatement of any underlying criminal conviction after execution of this agreement.



### 22. Breach and Waiver

Defendant agrees that Defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty

Appendix 20

plea.   In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea.   Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

W. STEPHEN MULDROW
United States Attorney


Timothy Henwood
Chief, Criminal Division
Dated:   5-11-23


Jenifer Y. Hernandez Vega
Chief, Child Exploitation and
Immigration Unit
Dated:   5|11|2023


Daynelle Alvarez Lora
Assistant United States Attorney
Dated:   May 10, 23


Edwin Mora
Counsel for Defendant
Dated:   5/25/23


LUIS ENRIQUE OJEDA PENA
Defendant

Dated:   5/25/23

Appendix 21

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: ___8/25/23___                      _____
                                         LUIS ENRIQUE OJEDA PENA
                                         Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: ___8/25/23___                      _____
                                         Edwin Mora
                                         Counsel for Defendant

Appendix 22

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, Defendant LUIS ENRIQUE OJEDA PENA admits his guilt as to the charge in Count One of the Indictment and admits the following:

From on or about July 9, 2022, through August 2, 2022, LUIS ENRIQUE OJEDA PENA knowingly employed, used, induced and coerced a 9 year old female minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and such visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, that is: the defendant demanded, received, and instructed the female minor how to send him sexually explicit videos and images of herself using a cell phone with camera capabilities which was manufactured outside of Puerto Rico.

On August 11, 2022, Homeland Security Investigations (HSI) Puerto Rico Crimes Against Children Task Force (PRCACTF) received a duty call from the San Juan Sex Crimes and Child Abuse Division of the Puerto Rico Police Department (PRPD) alleging that Luis Enrique OJEDA PEÑA sexually assaulted his 9-year-old stepdaughter (hereafter, MV#1) and asked her via social media for naked videos of herself masturbating.

On or about August 1, 2022, MV#1's mother checked MV#1's tablet because a video game was not downloading properly.

While closing/deleting applications, MV#1's mother found an open page which contained a sexually explicit image. On MV#1's tablet, she saw pornographic videos. The

Appendix 23

minor's mother entered MV#1's Messenger app and found sexually explicit messages between MV#1 and defendant OJEDA PEÑA, including messages where defendant was requesting sexually explicit videos of MV#1.

During the month of June 2020, MV#1 had moved from her mother's residence to live with her biological father. OJEDA PEÑA would call MV#1 and would ask MV#1 for videos of herself masturbating.

From on or about July 9, 2022, through August 2, 2022, OJEDA PEÑA called MV#1 on her tablet so that she would watch him masturbate. OJEDA PEÑA taught MV#1 how to masturbate and how to touch OJEDA PEÑA. Furthermore, OJEDA PEÑA engaged in sexual acts with MV#1.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of factual witnesses and experts, as well as physical and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt.

Discovery was timely made available to Defendant for review.

| | |
|---|---|
| Daynelle Alvarez Lora | Edwin Mora |
| Assistant U.S. Attorney | Counsel for Defendant |
| Dated: May 11, 2023 | Dated: 6/23/23 |
| | LUIS ENRIQUE OJEDA PENA |
| | Defendant |
| | Dated: 6/23/23 |

Appendix 24

In the United States District Court
For the District of Puerto Rico

|  |  |
|---|---|
| The United States of America,<br><br>Plaintiff<br><br>v.<br><br>Luis E. Ojeda-Pena,<br><br>Defendant. | Cr. No. 23-011 (FAB) |

<u>SENTENCING MEMORANDUM</u>

TO THE HONORABLE FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

I.      Introduction

Mr. Ojeda-Pena stands convicted of attempted production of child pornography (Count 2) after pleading guilty pursuant to an agreement.  Both parties respectfully move the Court to accept the plea agreement and impose an imprisonment sentence of 210 months, to be served concurrently with the anticipated state criminal sentence, as they constitute relevant conduct. This is a sentence sufficient but not greater than necessary to serve the goals of sentencing.

A sentence of 17 years and six (6) months, followed by a strict supervised release of five (5) years, which includes, *inter alia*, registering as a sex offender and undergoing sex-offense-specific evaluation and/or treatment, is a voluminous sentence.  It considers applicable guidelines enhancements, the seriousness of the offense, as well as allows for deterrence and public protection, while also considering Mr. Ojeda-Pena's background

Appendix 25

and personal characteristics. Additional enhancements in the PSR are unreliable and do not reflect historical intent.

II.     Plea Agreement

A.  Guidelines

The plea agreement reached by the parties start with a Base Offense Level of 32. *USSG § 2G2.1(a)*. Then, these enhancements were applied: (i) a (4) level enhancement because the offense involved a minor who had not turned 12 years; (ii) a two (2) level enhancement because the offense involved the commission of a sexual act; and (iii) a third enhancement because Mr. Ojeda-Pena was a relative (stepfather) of the minor. Because Mr. Ojeda-Pena timely accepted responsibility for his offense and waived his constitutional rights, thereby permitting the government to avoid preparing for trial and allocate their resources efficiently, a three (3) level decrease was applied for a Total Offense Level of 37. With a Criminal History Category of I, the lower end of the guidelines is 210 months of imprisonment.

The submitted guidelines and requested sentence serve the sentencing purposes, as it individualizes Mr. Ojeda-Pena's offense conduct and personal characteristics. Specifically, Mr. Ojeda-Pena attempted to produce child pornography when: (i) he requested sexually explicit visual depictions of his nine (9) year old stepdaughter (+4 enhancement); (ii) he committed a sexual act against the minor (+2 enhancement); and for being a relative (+2 enhancement).

These eight (8) levels enhancements result in a massive sentence increase of 171 months—only considering the lower end of the guidelines.[1]  The Court should also consider that Mr. Ojeda-Pena was charged with sexual aggression against the same minor victim in the related state case. Mr. Ojeda reached an agreement in which he pled guilty to several counts of lewd acts for a joint sentence recommendation of 15 years of imprisonment. State sentence is set for September 13, 2023.

### B.  Concurrence / Relevant Conduct

The sentence for the instant offense shall be imposed to run concurrently to the anticipated state term of imprisonment. *USSG § 5G1.3(c)*.[2] Here, a state term of imprisonment (15 years) is anticipated to result from another offense (local charges) which is relevant conduct to the instant offense of conviction.  In both cases —federal and local—(i) the victim is the same; (ii) the offenses occurred within the same timeframe; (iii) the sexual acts' guidelines enhancement are the same sexual acts charged in state court; and (iv) all criminal acts are in furtherance and reasonably related amongst them.

### III.   Additional enhancements in the PSR

Mr. Ojeda-Pena urges the Court to adopt the plea agreement and not apply the additional enhancements in the PSR.  The additional guidelines enhancements in the PSR, *although legally applicable*, lack individualized scientific and empirical data, are

---

[1] A Base Offense Level of 32 has a lower end guideline range of 121 months, while an Offense Level of 40 (with the eight level enhancements applied) has a lower end guideline range of 292 months. This is an increase of 171 months—a 14 year and three (3) months enhancement.

[2] *"If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment."*

Appendix 27

unreliable, and do not reflect historical intent or serve their purpose. The PSR includes the universal 2-level enhancement for use of a computer and an additional 5-level enhancement because the defendant engaged in a pattern of prohibited sexual conduct. These enhancements outrageously inflate Mr. Ojeda-Pena's sentence recommendation to life. However, since there is a statutory maximum penalty of 30 years, the guidelines imprisonment range would then be 30 years. *See, USSG § 5G1.1(a).*

A. Use of a computer enhancement [(USSG §2G2.1(b)(6)(B)]

When this enhancement was originally introduced, the Internet was in its infancy, and just 28% of offenders used computers.[3] With 96.2% of offenders now using a computer, the enhancement is essentially part-and-parcel of the offense. *Id.* As a District Judge explained, "*as widespread as computer use is now, enhancing for use of the computer is a little like penalizing speeding, but then adding an extra penalty if a car is involved*". *Id., (citing Federal Sentencing Practices and the Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sentencing Commission, at 6 (July 2009) (Statement of J. Robin Cauthron, fomer Chief Judge, D. Okla.)).*

In fiscal year 2011, 97.4% of defendants received the 2-level enhancement for use of a computer. *U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics (2011).* These circumstances thus describe conduct that is essentially inherent to the crime itself, not aggravating factors describing a more serious offense or higher risk of harm. *United States v. Kelly*, 868 F. Supp. 2d 1202, 1208-09 (D.N.M. 2012). As the Sixth Circuit recognized, enhancements that apply in almost every case are

---

[3] *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines.* Troy Stabenow. University of California Press on behalf of the Vera Institute of Justice, at page 16.

contrary to the purpose of enhancements, which are meant to increase a sentence for conduct more aggravated than the typical type of offense. *United States v. Robinson*, 669 F.3d 767, 778 (6th Cir. 2012). The Sentencing Commission confirms that "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders", *U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics (2011), at xi,* so that the "*current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors,*" *id.* at 323. Because the enhancements for computer use now apply to most offenders, the guideline fails to differentiate among offenders in terms of their culpability. *U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses (2012), at ii, xi, 209, 323.*

As reflected, this enhancement is applied to nearly every defendant, but the rationale for creating and continuing the enhancement is rarely present.[4]  Congress was concerned with deterring the online distribution and trade of child pornography. *141 Cong. Rec. S5509 (Apr. 6, 1995) (Senator Hatch) (purpose was to "increase penalties for the use of computers in connection with the distribution of child pornography, in part to ensure that the information highway is not littered with the debris of child pornography"); see also id. (Senator Grassley) (purpose was to "discourage child pornographers from using computers to trade in child pornography").*

---

[4] *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines.* Troy Stabenow. January 1, 2009, at page 15.

The Commission noted that "*not all computer use is equal...sentencing policy should be sensitive to these differences in culpability so that punishment are tailored to fit the circumstances of each individual's case*". *Deconstructing the Myth, at page 15.* (*"Online pornography comes from the same pool than can be found in specialty magazines or adult bookstores...thus, the differences between print and computerized porn is not in the content of the images, but in the means of distribution*". *Id., at 15-16*. The adjustment does not distinguish between persons who email images to a single voluntary recipient and those who establish a BBS and distribute child pornography to large numbers of subscribers...the two-level adjustment might be narrowed to apply only to cases that involve distributing child pornography in a way that makes is widely accessible, such as posting it on a BBS or website. *Id*. Studies indicate that many defendants to whom the enhancement was applied were not threatening the harm the enhancement was designated to address. *Id*.

### B. Pattern of Prohibited Sexual Conduct

The 5-level enhancement for pattern of prohibited sexual conduct was first considered by the Commission in an effort to target the most serious, repeat offenders.[5]  The Commission had sought since 1991 to create appropriate pattern of activity enhancements for child pornography offenders with a history of abusing children. *The History of the Child Pornography Guidelines, United States Sentencing Commission (October 209), at 40*. Mostly because, as demonstrated in scientific studies, a past history of convictions for sexual offending is a risk factor for later recidivism.[6]

---

[5] *Deconstructing the Myth at page 17.*
[6] *A Method for Careful Study, at 22.*

6

IV.    3553(a) factors

Mr. Ojeda-Pena knows he must pay for what he did. It is a serious offense, which warrants a sentence that not only considers his personal characteristics, but also the gravity of his conduct, as well as the need for respect of the law, just punishment and deterrence. Mr. Ojeda-Pena accepted responsibility since the outset. When arrested by local authorities, Mr. Ojeda-Pena waived his rights and confessed.  A Grand Jury indicted him on January 2023, and on June 2023—five months after—he pled guilty.   Mr. Ojeda-Pena has not reached out in any way or form to the minor victim or her family.  While incarcerated at Bayamon 705 for his related state case, Mr. Ojeda-Pena suffered a mental health breakdown where he was diagnosed with depression, anxiety, and poor impulse control. He was hospitalized for a week and further medicated. This is not the first time Mr. Ojeda-Pena has had a mental health breakdown. As reflected from medical records, he has tried to commit suicide in previous occasions, but never sought mental health treatment up until now.

Mr. Ojeda-Pena feels remorseful and embarrassed. At first, he did not think in the offense or contemplated on how this could have happened. Now, after deep deliberation upon his conduct and how his actions could have affected the victim, Mr. Ojeda-Pena feels awful. He acknowledges his conduct traumatized the victim permanently; that not only the victim, but her family, suffered tremendously because of him; that no person, let alone a child, should be a victim of actions such as these.  Mr. Ojeda-Pena, who is also a father, has now placed himself in the position of the victim's parents and how he would react if something like this happened to one of his daughters. Mr. Ojeda-Pena knows the victim's father since childhood. He feels embarrassed and does not know how to even look at him

in the eyes.  Mr. Ojeda-Pena knows these events will affect the victim and her family forever.

The harm is done. Now is time for Mr. Ojeda-Pena to pray for forgiveness. If granted the opportunity, Mr. Ojeda-Pena would like to apologize to the victim and her family. Lastly, Mr. Ojeda-Pena wants to take advantage of his time in prison. He will enroll in vocational and educational training to be best prepared when he serves his sentence. Mr. Ojeda-Pena is also willing to undergo sex-offense-specific evaluation and participate in sex offender and mental health treatment. He knows he needs help.

Mr. Ojeda-Pena is 37 years old. He has four (4) minor children. He is not a violent person. His only prior conviction is a drug related and non-violent offense, for which he paid a fine.  Fortunately, Mr. Ojeda has the support of his family.  Notwithstanding the serious allegations, they have been with him since day one. Specifically, his mother and grandmother. Growing up, Mr. Ojeda-Pena was in the right track. He volunteered at the U.S. Customs and Border Protection's Explorers program, where he conducted community service, including orientating young children regarding drug use prevention. His participation was highlighted in the local newspaper. Mr. Ojeda-Pena was also interested in joining the Puerto Rico Police Academy.  The major of his town recommended him. Mr. Ojeda-Pena completed an associate degree in culinary arts, becoming an excellent chef.  The town's major awarded him with a scholarship.  This was also highlighted in the local newspaper.  Mr. Ojeda-Pena also has three (3) years of criminal justice studies and a vocational and technical degree in auto electromechanics.

There is no excuse for his actions. Mr. Ojeda-Pena will pay. A sentence of 17 years and six (6) months is no picknick. It is a big, just sentence which reflects the seriousness of

8

Appendix 32

the offense, promotes respect for the law, and allows for deterrence. It also provides Mr. Ojeda-Pena with the needed educational, vocational, and correctional treatment in the most effective manner.  After his release, Mr. Ojeda-Pena must serve an additional supervised release term of five (5) years to life. This is not a walk in the park. It is a supervision with the strictest of conditions, including employment limitations, computer monitoring, registering as a sex offender—with all the underlying additional conditions— substance abuse monitoring, among others. Any violation could send him back to prison.

V.      Conclusion

Mr. Ojeda-Pena moves the Court to adopt the plea agreement and impose an imprisonment sentence of 210 months to run concurrently with the anticipated state sentence in Cr. Nos. KIS2022G0058-61 and KLE2022G0369, followed by a supervised release of five (5) years.[7] The PSR's use of a computer enhancement is essentially inherent to the crime itself, and not an aggravating factor describing a more serious offense or higher risk of harm, contrary to the purpose of enhancements, which are meant to increase a sentence for conduct more aggravated than the typical type of offense. Mr. Ojeda-Pena distributed no child porn image, which was the original concern Congress had in deterring online distribution and trade of child pornography.

Lastly, the PSR's pattern of prohibited sexual conduct enhancement is also unsupported, misleading, and lacking any scientific evidence. This enhancement was first

---

[7] The defendant moves the Court to waive the $5,000.00 additional special assessment pursuant to 18 U.S.C. § 3014. This assessment is only imposed on any <u>non-indigent person</u>. After the Court reviewed the financial affidavit subscribed by Mr. Ojeda-Pena, it deemed appropriate to appoint counsel from the Federal Public Defender. The PSR confirms the defendant does not have the ability to pay a fine within the advisory guidelines range based upon his financial profile. As part of the presentence investigation, the defendant completed a financial affidavit which indicates he has no assets or liabilities.

Appendix 33

considered by the Commission to target the most serious, repeat offenders, with a history of abusing children, in order to attack recidivism. There is no evidence that Mr. Ojeda-Pena has a history of sexually abusing children. There is no scientific evidence, such as a forensic evaluation and report, reflecting that Mr. Ojeda-Pena is a dangerous sex offender, who will continue to engage in a pattern of sexual criminal behavior. An imprisonment sentence of 210 months is sufficient but not greater than necessary to serve the goals of sentencing.

WHEREFORE, Mr. Ojeda-Pena respectfully requests this Honorable Court to NOTE this sentencing memorandum, ADOPT the plea agreement; and SENTENCE him as requested.

I HEREBY CERTIFY that on this date I electronically filed the present motion with the Clerk of the Court using the CM/ECF system which will send electronic notification of said filing to all parties of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 30th day of August 2023.

Hector L. Ramos-Vega
Interim Federal Public Defender
District of Puerto Rico

*S/ Edwin A. Mora Rolland*
Edwin A. Mora Rolland
Assistant Federal Public Defender
USDC-PR 304603
241 F.D. Roosevelt Avenue
San Juan, Puerto Rico 00918
(787) 281-4922
(787) 281-4899
edwin_mora@fd.org

10

Appendix 34

1              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO

2

3

UNITED STATES OF AMERICA,      )

4                            )
                Plaintiff,     )

5                            )
vs.                   )Case No: 23-11-FAB

6                            )
LUIS ENRIQUE OJEDA PENA,     )

7                            )
                Defendant.     )

8

9  _____

10

             TRANSCRIPT OF SENTENCING HEARING

11                  HELD BEFORE
        THE HONORABLE JUDGE FRANCISCO A. BESOSA

12           Wednesday, September 6, 2023

13  _____

             A P P E A R A N C E S

14

15  For the Plaintiff:

16     LINET SUAREZ, AUSA

17

18  For the Defendant:

     EDWIN MORA, AFPD

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS COMMENCED AT 10:12 A.M.)

 2

 3              DEPUTY CLERK:  Criminal Case 23-11, United States

 4    of America versus Luis Enrique Ojeda-Pena for sentencing

 5    hearing.  On behalf of the Government is AUSA Linet Suarez.

 6    On behalf of the defendant is AFPD Edwin Mora.  The

 7    defendant is present in the courtroom under custody and

 8    assisted by a certified court interpreter.

 9              MR. MORA:  Good morning again, Your Honor.

10              MS. SUAREZ:  Good morning, Your Honor.

11              THE COURT:  Good morning.  Mr. Mora, is there

12    anything you would like to say on behalf of Mr. Ojeda before

13    I pronounce sentence?

14              MR. MORA:  Yes, Your Honor.  Thank you.  Your

15    Honor, first, we request the Court to accept and adopt the

16    plea agreement reached by the parties, and impose a sentence

17    of 210 months of imprisonment, which is 17-and-a-half years.

18    And as Your Honor knows, the defendant is also facing state

19    criminal charges.  So our request would be for this sentence

20    to run concurrent with the anticipated state sentence, as

21    both cases are relevant conduct.  We are dealing with the

22    same minor, same time frame, related acts, Your Honor.  So

23    that would be our request; 17-and-a-half years and a

24    supervised release of five years, Your Honor.

25              We note that the PSR calculated additional
```

1    enhancements that we did not object to because we know that

2    legally they apply, but as highlighted in our memo, Your

3    Honor, we are in disagreement with the enhancements.  Our

4    request would be for the Court to adopt the calculations in

5    the agreement, Your Honor.

6         Your Honor, as to Mr. Ojeda-Pena, this will be his

7    first imprisonment sentence.  He has a previous sentence of

8    a $500 fine that he had to pay, but he has no history of

9    violent conduct, no past history of sex abuse conduct, Your

10   Honor.  He has his family support.  His mother and

11   grandmother are here in court.  They have been with him

12   since the start of the case.

13        Your Honor, he is 37 years old.  I understand that

14   he was under -- as I highlighted on my memo, he was sort of

15   on the right track, Your Honor.  He was -- volunteered for

16   the CBP Customs Explorer.  He did community service.  He

17   talked to the young men about drug prevention.  He studied

18   criminal justice.  He studied international kitchen.  He

19   became a chef.

20        Your Honor, and we note the seriousness of this

21   offense.  We note the seriousness of his conduct, but we

22   want to highlight, Your Honor, that a 17-and-a-half-year

23   sentence is a big, big sentence for Mr. Ojeda.  It considers

24   the guidelines, considers the conduct, considers that he was

25   the stepfather, considers that there was sex acts involved

1   in this case, considers that the minor was under 12 years of

2   age.  So the plea agreement considers an enhancement of

3   eight levels, Your Honor.  So this is a massive sentence

4   increase already, Your Honor.

5        After serving his sentence, as you know, he will

6   be placed on a strict supervised release term.  You know, he

7   will have to register as a sex offender, with all the

8   underlying conditions that these necessarily involve.  He

9   would go through a sexual evaluation, sexual treatment.  He

10   will have monitoring on electronic devices, drug evaluation

11   and treatment, Your Honor.  You name it.  He will be under

12   the strictest conditions of supervised release.

13        So Your Honor, as to the offense, this is not an

14   easy case for an attorney, for a prosecutor, and certainly

15   for the judge, for a probation officer, Your Honor.  This is

16   a very serious case.  He accepted responsibility since the

17   outset.  He confessed immediately when he was arrested.

18   Your Honor, he pled guilty in five months.

19        We had the PSR interview, and he told the

20   probation officer, he told myself that he had not thought of

21   the consequences of his actions upon the victim and the

22   victim's family.  He decided not to think about it, but Your

23   Honor, he has done, and he knows he caused trauma, he caused

24   suffering to the victim, to their family.  He knows that

25   they will be forever affected.

1          Your Honor, he is a father as well.  He is a

2     father of four minor children, so he has placed himself in

3     the position of the victim's parents, and he doesn't know

4     what he would have done, you know, in their position, Your

5     Honor.  So he knows that this has affected the other party,

6     and he knows that he must pay for what he did.  He is

7     willing to undergo any sort of treatment that he will

8     undergo, that -- it is actually a condition recommended by

9     the probation officer.

10          So, Your Honor, we just want to highlight to the

11     Court that -- to adopt the agreement.  It already considers

12     the enhancements, the offense conduct.  And that

13     17-and-a-half years, Your Honor, is a very, very big

14     sentence.  Your Honor, he is facing 15 years, an anticipated

15     sentence of 15 years in state court as well.  He pled guilty

16     in state court as well.  So he basically admitted

17     everything, confessed, and pled guilty, Your Honor.  So

18     that's what we are requesting, Your Honor.  Thank you.

19               THE COURT:  Ms. Suarez.

20               MS. SUAREZ:  Good morning, Your Honor.  Your

21     Honor, in this case the Government would like to begin by

22     stating that the calculations in the presentence report are

23     correct.  The enhancements are applicable, however, in this

24     case, we do note that the enhancements were not included in

25     the plea negotiations as a part of the plea negotiations

1    themselves.  In this particular case, the Government is

2    going to stand by the recommendation in the plea negotiation

3    and the plea agreement, which is a recommendation at the

4    lower end of a total offense level of 37 combined with the

5    criminal history.  In this case, it's a Criminal History

6    Category of I.  Therefore, the guidelines range are

7    210 months to 262 months, and the Government's

8    recommendation is for 210 months to run concurrently to the

9    state sentence.  Your Honor, we believe that this sentence

10   recommendation is sufficient but not greater than necessary

11   and, as such, we stand by the recommendation in the plea

12   agreement.

13        And Your Honor, we do note in this case we also

14   have the victim -- the minor victim's mother in court today

15   who would like to make a statement before the Court whenever

16   the judge is ready.  In this particular case, for the

17   record, the minor victim's mother's name is Ms. Ana

18   Torres-Encarnacion.

19        THE COURT:  Well, I would like to hear what

20   Ms. Torres has to say now.

21        MS. SUAREZ:  Yes, Your Honor.

22        THE INTERPRETER:  Your Honor, may the interpreter

23   sit, to be able to make notes?

24        THE COURT:  Yes.

25        Good morning, Ms. Torres.

1          THE INTERPRETER:  May Ms. Torres sit also, Your

2     Honor?

3          MS. TORRES:  Good morning to you, Your Honor.

4          THE COURT:  First of all, please identify

5     yourself.

6          MS. TORRES:  My name is Ana Torres-Encarnacion.

7          THE COURT:  And what is your relationship with the

8     minor victim?

9          MS. TORRES:  I am Daynelle's mom.

10          THE COURT:  Please go ahead.

11          MS. TORRES:  Your Honor, from my perspective, and

12     as a result of everything that we have gone through, my

13     daughter and I do not feel safe.  We are not comfortable

14     with the idea that this man could be released onto the

15     streets some day.  And I want to state that during those six

16     years, this man, not only did he cause harm to my daughter;

17     he also caused harm to me, both psychological and physical

18     harm.  And during these six years, I stopped being the

19     person that I was.  I lost weight.  I lost a lot of time

20     that I could have spent with my daughters.  I lost a lot of

21     me time.  The truth is that I was in a broken state of

22     emotions due to his acts.  And he never cared about

23     anything.  The only thing that he ever cared about was sex,

24     women, and him being happy.  After he was happy, everything

25     was fine.

1              And I have to feel the pain that I feel, that my

2      daughter feels, that my family feels from having placed a

3      trust in him that we had never placed in anyone else, but

4      that we did place in him.  And within my way of thinking,

5      there is no way that he did things thoughtlessly or without

6      thinking about it.  He did, indeed, know what he was doing.

7              More so, my daughter has constant nightmares with

8      the fact that he may get out, that she may run into him.

9      She is also afraid of his mother, his mother specifically.

10     And really no one, not him nor his family, no one knows how

11     we are feeling.  They haven't the slightest idea.  I don't

12     need to say this, but I will say this:  My daughter had to

13     go through and overcome a venereal disease thanks to that

14     man that you have there.  And, therefore, I don't want

15     nothing to do with him.  I don't want to see him again, and

16     if he could stay in that prison until forever, I wouldn't

17     mind.  No, I wouldn't.

18              THE COURT:  Thank you, Ms. Torres.

19              Mr. Ojeda, is there anything you would like to

20     say?

21              THE INTERPRETER:  May the interpreter return?

22              THE COURT:  One moment, please.

23              Mr. Ojeda, is there anything you would like to

24     say?

25              THE DEFENDANT:  Yes.

1          THE COURT:  Go ahead, please.

2          THE DEFENDANT:  First of all, good morning.  Thank

3     you for the opportunity for allowing me to make a statement.

4     Nothing.  I want to be brief.  I would only like to state

5     that I am remorseful for this situation because during the

6     time that I have been detained, I have only thought about

7     me, my family, and my children, and I haven't had the

8     opportunity to state how remorseful I do feel.  This is the

9     first opportunity that I have had in order to apologize to

10    the family, and I am really sorry.  And I am willing to face

11    the situation because I am also the father of girls, and I

12    can understand her situation and whatever it is that she may

13    be going through.  And I am willing to accept

14    responsibility.  So thank you for allowing me to express

15    myself.  And that would be all.  Good day.

16          THE COURT:  On June 6, 2023, Defendant, Luis

17    Enrique Ojeda-Pena, pled guilty to Count Two of the

18    indictment in Criminal Case Number 23-11, which charges that

19    he violated Title 18, United States Code Sections 2251(a)

20    and 2251(e), attempted production of child pornography,

21    which is a Class B felony.

22          The November 1, 2021, edition of the Sentencing

23    Guidelines Manual has been used to calculate the guideline

24    adjustments pursuant to the provisions of Guideline

25    Section 1B1.11(a).  Based on the provisions of Guideline

1     Section 2G2.1, a base offense level of 32 has been

2     determined because Mr. Ojeda has been convicted of attempted

3     production of child pornography.

4           Because his offense involved a minor who had not

5     attained the age of 12, she was nine years old, the base

6     offense level is increased by four levels pursuant to

7     Sentencing Guideline Section 2G2.1(b)(1)(A).  Because

8     Mr. Ojeda's offense involved the commission of a sexual act,

9     the base offense level is increased by two more levels

10     pursuant to Sentencing Guideline Section 2G2.1(b)(2)(A).

11     Because the minor, who was Mr. Ojeda's stepdaughter, was in

12     the custody, care or supervising control of Mr. Ojeda, the

13     base offense level is increased by an additional two levels.

14           Because Mr. Ojeda's offense involved the use of a

15     computer or an interactive computer service to persuade,

16     induce, entice, or coerce the minor to engage in

17     sexually-explicit conduct, or to otherwise solicit

18     participation by a minor in the explicit conduct, the base

19     offense level is increased by two more levels pursuant to

20     Sentencing Guideline Section 2G2.1(b)(6)(A)(i) and (ii).

21           Because Mr. Ojeda's offense is a covered sex

22     crime, Sentencing Guideline Section 4B1.1 and Sentencing

23     Guideline Section 4B1.5(a) do not apply because Mr. Ojeda

24     engaged in a pattern of activity from July 9, 2022, to

25     August 2, 2022, involving prohibited sexual conduct.  He is

1    a repeat and dangerous sex offender against minors.  The

2    offense level is, therefore, five plus the offense level

3    determined under Chapters Two and Three of the Sentencing

4    Guidelines Manual.  In this case, the total applicable

5    offense level is 47 pursuant to Sentencing Guideline

6    Section 4B1.5(b)(1).

7          Because Mr. Ojeda timely accepted responsibility

8    for his offense, however, his offense level is reduced by

9    three levels pursuant to Guideline Sections 3E1.1(a) and

10   3E1.1(b).  There are no other applicable guideline

11   adjustments.  His total offense level is 44.

12         Pursuant to Chapter 5, Part A, Comment 2, when the

13   total offense level is calculated to be in excess of 43, the

14   offense level will be treated as a Level 43.

15         Because Mr. Ojeda has been previously convicted of

16   receiving and transporting stolen goods, illegal

17   appropriation, and damages in Criminal Cases Numbers

18   NSCR20120093 and 94, and NSCR201200971, by the Commonwealth

19   Superior Court, Fajardo Division, one criminal point

20   resulted.  One criminal history point places him in Criminal

21   History Category I.

22         Mr. Ojeda has pending state cases charging him

23   with violations of Law 246, for negligence towards a minor,

24   sexual assault of a minor, and sexual lewd act with a child

25   by the Commonwealth Superior Court, San Juan Division.

1    Those cases are considered relevant conduct to this case.

2            Based on a total offense level of 43 and a

3    Criminal History Category of I, the guideline imprisonment

4    range for Mr. Ojeda's offense is life imprisonment, but the

5    maximum statutory term is 360 months of imprisonment.  There

6    is a fine range of 50,000 to $250,000, plus a supervised

7    release term of from five years to life.

8            The probation officer has correctly adjusted the

9    guideline computations, and the presentence investigation

10   report satisfactorily reflects the components of Mr. Ojeda's

11   offense by considering its nature and circumstances.  The

12   Court has also considered the other sentencing factors set

13   forth in Title 18, United States Code Section 3553(a), the

14   presentence investigation report, the plea agreement, the

15   sentencing memorandum filed on Mr. Ojeda's behalf, arguments

16   by counsel and the prosecutor, statements by the minor

17   victim's mother, Ms. Ana Torres-Encarnacion, and Mr. Ojeda's

18   allocution.

19           Mr. Ojeda is 37 years old.  He has an associate's

20   degree in international cooking, was unemployed for six

21   months prior to his arrest for his offense, and has a

22   history of psychological treatment for depression and

23   anxiety, and using cocaine and marijuana.

24           Mr. Ojeda admitted to watching pornographic movies

25   with his nine-year-old stepdaughter, showed her how to

1   masturbate, made her masturbate him, penetrated her, made

2   video calls in which he masturbated for her, and requested

3   videos from her masturbating through Messenger chats.

4        When police officers interviewed the minor, she

5   indicated that Mr. Ojeda would put his hand on her genital

6   area, would penetrate her, and would ask her for videos.

7   Mr. Ojeda and his stepdaughter would view pornographic

8   material together, and he showed her videos of him having

9   anal sex with her mother's friend.  He also called her on a

10  tablet through video call and masturbated.  Mr. Ojeda would

11  masturbate in front of the minor, called her using the video

12  call on the tablet so that she could see him masturbate.  He

13  showed her how to masturbate and touch herself and to touch

14  him.  He also showed her what a vibrator was and how to use

15  it.

16        The parties agreed on a sentence of 210 months of

17  imprisonment which does not fall within the guideline range

18  reflected in the presentence investigation report.  The

19  Court finds that the sentence recommended by the parties

20  does not reflect the seriousness of Mr. Ojeda's offense,

21  does not promote respect for the law, does not protect the

22  public from additional crimes by Mr. Ojeda, and does not

23  address the issues of deterrence and punishment.

24        Nevertheless, the Court has identified factors

25  that warrant a variant sentence before the maximum statutory

1    term of imprisonment of 360 months pursuant to the

2    provisions of Title 18, United States Code Section 3553(a).

3    The Court has considered Defendant's mental health history,

4    his employment record, his family ties and responsibility,

5    and also the heinous nature of his offense, the plea

6    agreement, and the early acceptance of responsibility.

7         Accordingly, it's the judgment of the Court that

8    Luis Enrique Ojeda-Pena is committed to the custody of the

9    United States Bureau of Prisons to be imprisoned for a term

10   of 300 months.  Whether this term of imprisonment would run

11   concurrently or consecutively with the sentences to be

12   imposed by the Commonwealth in Cases KLE2022G0369,

13   KIS2002G0058, and KIS2022G0061 will be left to the judge of

14   the Commonwealth Court.

15        Upon release from confinement, Mr. Ojeda shall be

16   placed on supervised release for the rest of his life, to be

17   served under the following terms and conditions:

18        He shall observe the standard conditions of

19   supervised release recommended by the United States

20   Sentencing Commission and adopted by this Court.

21        He shall not have personal contact or contact by

22   mail, by telephone, through a computer, or any other

23   electronic device, or through third parties with the minor

24   victim, and shall not have unsupervised contact with any

25   other related or non-related person below the age of 18,

1    unless determined to be appropriate by a treatment provider

2    and the probation officer.  The only exception to this

3    condition would be in the incidental contact in normal

4    commercial life.

5            He shall consent to the installation of computer

6    monitoring software or systems that will enable the

7    probation officer or his or her designee to monitor and

8    filter any internet accessing and data storage device owned

9    or controlled by Mr. Ojeda.

10           Accordingly, to ensure compliance with the

11   computer monitoring condition, Mr. Ojeda must allow the

12   probation officer to conduct initial and periodic

13   unannounced searches or examinations on any computer or

14   electronic device owned or controlled by him, and subject

15   the computer or electronic device to monitoring prior to or

16   after the installation of the monitoring software.  The

17   searches or examinations shall be conducted to determine

18   whether the computer or device contains any prohibited data

19   prior to the installation of the monitoring software,

20   whether the monitoring software is functioning effectively

21   after its installation, and whether there have been attempts

22   to circumvent the monitoring software after its

23   installation.

24           The searches and examinations may result in

25   retrieval and copying of all data from the device and any

1    internal or external peripherals, and may involve the

2    removal of the equipment for the purpose of conducting a

3    more thorough inspection.

4         Additionally, Mr. Ojeda shall immediately notify

5    the probation officer upon registration for access to any

6    website or internet service that allows for communication

7    with other users, uploading and downloading of files,

8    posting of any material, et cetera.  Notification shall

9    include the site address, user name, passwords, pseudonyms

10   and logons, including but not limited to, social networks,

11   cloud storage services, message boards, et cetera.

12   Mr. Ojeda shall warn any other person who may use these

13   computers or electronic devices that they may be subject to

14   searches and examinations pursuant to this condition.

15   Failure to consent may be grounds for a revocation of

16   supervised release.  Mr. Ojeda shall pay for the cost of the

17   monitoring service at the prevailing rates.

18        He shall not engage in a specified occupation,

19   business, or profession bearing a reasonable direct

20   relationship to the conduct constituting his offense.

21   Specifically, Mr. Ojeda shall not work with persons under

22   the age of 18 or hold a job that gives him authority or

23   access to potential victims, except in incidental contact in

24   normal commercial life.  Any employment must be notified to

25   the probation officer in advance.  The probation officer

1   will make an assessment of the job placement and set

2   employment restrictions based on the Sex Offender Management

3   Procedures Manual.  Mr. Ojeda shall consent to third-party

4   disclosure to any employer or potential employer.

5            He shall not participate in any volunteer activity

6   or be involved in any children's or youth organization or

7   any group that would bring him into close contact with a

8   person or persons under the age of 18 unless with prior

9   approval by the probation officer.

10           He shall comply with the requirements of the Sex

11  Offender Registration and Notification Act as directed by

12  the probation officer, the Bureau of Prisons, or any sex

13  registration agency of any state, United States territory,

14  or Indian tribe in which he may reside, work, be a student,

15  carry on a vacation, or convicted of a qualifying offense.

16           He shall cooperate in the collection of a DNA

17  sample as directed by the probation officer pursuant to the

18  revised DNA collection requirements and Title 18, United

19  States Code Section 3563(a)(9).

20           He shall submit to an initial polygraph

21  examination and at subsequent maintenance testing intervals

22  to be determined by the probation officer to assist in

23  treatment planning, case monitoring, and with the

24  requirements of his supervision or treatment program.

25  Polygraph examinations shall be conducted at least once

1    annually, but may be conducted on a continuous basis

2    commensurate with risk as determined by the probation

3    officer.

4         He shall submit himself and his property, house,

5    residence, vehicles, papers and effects, computers, and

6    other electronic communication or data storage devices or

7    media to a search at anytime, with or without a warrant, by

8    the probation officer and, if necessary, with the assistance

9    of any other law enforcement officer, but only in the lawful

10   discharge of the supervision functions of the probation

11   officer, who must have a reasonable suspicion of unlawful

12   conduct or of a violation of a condition of supervised

13   release.  The probation officer may seize any electronic

14   communication or electronic device or medium which will be

15   subject to additional forensic investigation or analysis.

16   Failure to submit to a search or permit a seizure may be

17   grounds for a revocation of supervised release.  Mr. Ojeda

18   shall warn any other resident or occupant that his premises

19   and residence may be subject to searches pursuant to this

20   condition.

21        He shall undergo a sex offense-specific evaluation

22   and participate in a sex offender treatment and mental

23   health treatment programs arranged by the probation officer.

24   Mr. Ojeda shall abide by all rules, requirements, and

25   conditions of the sex offender and mental health treatment

1    programs and any testing available as approved by the Court.

2    He shall waive his right of confidentiality in any records

3    for sex offender and mental health assessment and treatment,

4    and sign any necessary release form required to obtain the

5    records to allow the probation officer to review and adjust

6    Mr. Ojeda's course of treatment and progress with the

7    treatment provider.  Mr. Ojeda shall contribute to the cost

8    of all those services based on his ability to pay or the

9    availability of payments by third parties.

10          He shall not possess or use controlled substances

11   unlawfully, and shall submit to a drug test within 15 days

12   of release from imprisonment.  After his release, he shall

13   submit to random drug testing, not less than three samples

14   during the supervision period, but not more than 104 samples

15   each year, in accordance with the Drug Aftercare Program

16   Policy of the United States Probation Office as has been

17   approved by this Court.  He shall participate in an approved

18   substance abuse monitoring program to determine if treatment

19   is necessary.  If necessary, the treatment will be arranged

20   by the probation officer in consultation with the treatment

21   provider.  Mr. Ojeda shall contribute to the cost of those

22   services in an amount arranged by the probation officer

23   based on his ability to pay or the availability of payments

24   by third parties.

25          Having considered Mr. Ojeda's financial condition,

1    a fine is not imposed.  A special monetary assessment in the

2    amount of $100 is imposed, however, as required by law.

3              Pursuant to Title 18, United States Code

4    Section 3014, an assessment of $5,000 is imposed for the

5    Victims of Trafficking Act.

6              The forfeiture provision at paragraph 20 of the

7    plea agreement is ordered enforced.

8              Mr. Ojeda, you have entered into a plea agreement

9    in which you waived your right to appeal your conviction and

10   your sentence.  That waiver is enforceable, but if your

11   waiver is not enforceable, you may present that argument to

12   the Appellate Court.  A notice of appeal must be filed in

13   this court within 14 days of when the judgment will be

14   entered.  If you are unable to pay the cost of an appeal,

15   you may apply for leave to appeal as an indigent.  If you

16   request it, the Clerk of the Court will prepare and file a

17   notice of appeal on your behalf.

18             Mr. Mora, is there any particular institution you

19   would like me to recommend?

20             MR. MORA:  Your Honor, I understand that depending

21   on what the state judge decides, that since he was brought

22   here on a writ, maybe they have primary jurisdiction and he

23   will serve there first.  But in any event, Your Honor, he

24   would recommend somewhere near Houston, Texas.  He has

25   family over there.  His family frequents that state.  So

1    somewhere near Houston, Texas, Your Honor.

2         THE COURT:  I will recommend that Mr. Ojeda be

3    designated to an institution near Houston, Texas.  I would

4    also recommend that while at the institution, he participate

5    in any vocational training available there, that he take

6    courses in English as a second language, that he participate

7    in a 500-hour drug and alcohol treatment program offered by

8    the Bureau of Prisons, that he participate in sex offender

9    and mental health treatment while at the institution.

10        Anything else?

11        MR. MORA:  Yes, Your Honor.  Several things, Your

12   Honor.  First, in the plea agreement, obviously, we had a

13   waiver of appeal clause.  Your Honor just sentenced him

14   above the waiver of appeal range.  So, Your Honor, we just

15   want to object to the procedural and substantive

16   unreasonableness of the sentence, Your Honor.  And this is

17   why:  First, as both parties requested, the guidelines in

18   the plea agreement for the Court to adopt, it is our

19   position, Your Honor, that they already consider the

20   specific circumstances of this case, specifically what the

21   judge highlighted; that the minor was below 12 years, that a

22   sexual act was committed, and that he was, basically, her

23   stepfather, Your Honor.  So all of those enhancements were

24   already applied.  This results in an eight-level enhancement

25   already, Your Honor.

1       Second of all, Your Honor, although, as I

2  previously stated, although I did not object to the

3  guidelines calculations in the PSR, we do want to highlight,

4  Your Honor, that we disagree with the first two -- with the

5  enhancement of the use of a computer, Your Honor.  It is a

6  fact that he used a tablet, an iPad, Your Honor, in this

7  case to commit the offense, Your Honor.  However, as

8  highlighted in our sentencing memo, as highlighted in

9  several reports, highlighted by the Commission, you know,

10 all of these reports deconstructing the sex offense

11 guidelines, Your Honor, basically, what we want to

12 highlight, Your Honor, is that by -- this is a United States

13 Sentencing Commission report in 2011, so this is 12 years

14 ago, Your Honor -- 97.4 percent of the defendants used a

15 computer.  So I would only imagine that today in 2023, this

16 percentage has increased.

17      So what we highlight is, Your Honor, that this is

18 a -- use of a computer is basically part of the offense.

19 It's not an aggravating factor.  It is inherent to the

20 crime.  It is not an aggravating factor describing a more

21 serious or higher risk of harm.  So, Your Honor, that's why

22 we understand a two-level enhancement here, although

23 applicable, Your Honor has the discretion not to apply it

24 because, basically, it's part of the offense already.

25      And, Your Honor, as to the other enhancement,

1   which is a five-level enhancement which takes us to an

2   offense level of 47, is the five-level enhancement for

3   pattern of activity, pattern of sex offense activity in this

4   case, Your Honor.  However, again, as highlighted in our

5   memo and as stated by the Commission -- this is a report of

6   October 2019 -- the intent of these enhancements was to

7   attack the offenders with a history of abusing children, a

8   history of dangerous offenders with a past history of

9   abusing children, Your Honor.  As highlighted, again, in our

10  memo and today, this defendant has no history of abusing any

11  other children, any history of past sex child abuse.  He

12  pled guilty for what he did and what is alleged in the

13  indictment, which covers a two or three-month span.  So,

14  Your Honor, again, we want to highlight that we disagree

15  with this enhancement.  It has been critiqued, and in your

16  discretion, Your Honor, you can disregard it.

17          Your Honor, as to the determination of

18  concurrency, Your Honor, I understand Your Honor left to the

19  state judge, the Commonwealth judge to determine whether

20  these offenses will run concurrently or consecutively.  Your

21  Honor, we object as to Your Honor's determination because

22  according to the guidelines -- this is Guideline 5G1.3(c) --

23  the sentence for the instant offense shall be imposed to run

24  concurrently to the anticipated state term of imprisonment,

25  Your Honor.  So I understand that the Court has the

1    authority and, according to the guidelines, shall impose

2    this sentence to run concurrently.  It is not only leaving

3    it to the state judge's discretion.  According to the

4    guidelines, it shall be imposed to run concurrently.  So we

5    object, Your Honor, to that determination as well.

6              And, Your Honor, two more things.  As to the

7    supervised release term, we understand that the judge

8    sentenced him to a supervised release term of life.  Your

9    Honor, if he ends up serving 25 years, which is what Your

10   Honor just sentenced him to -- and we don't know what's

11   going to happen in state court, but just only considering

12   the 25 years that Your Honor just imposed, he is 37 years

13   old.  He will be out when he is 62.  Well, with good credit,

14   obviously, that can go lower.  But, Your Honor, I think that

15   a supervised release term of life is excessive.  It's

16   unreasonable, Your Honor.  And I understand the guidelines

17   recommend a guideline of five years -- a supervised release

18   term of five years, Your Honor.

19             Your Honor, and lastly --

20             THE COURT:  Well --

21             MR. MORA:  Yes.

22             THE COURT:  It's at least five years, up to life.

23             MR. MORA:  Yes.  We know, Your Honor.

24             And as to the fine imposed, Your Honor, the $5,000

25   fine imposed pursuant to --

1          THE COURT:  It is not a fine; it is an assessment.

2          MR. MORA:  Assessment, Your Honor.  Pursuant to

3     18 U.S.C. 3014, Your Honor, as stated in the section, this

4     assessment is only imposed to any non-indigent person, Your

5     Honor.  We understand that they are.

6          THE COURT:  I don't know that.

7          MR. MORA:  As of today.

8          THE COURT:  He can argue that to the Financial

9     Litigation Unit at the U.S. Attorney.

10         MR. MORA:  Our contention, Your Honor, right now

11    is that he is an indigent person.  He was appointed to the

12    Public Defender's Office to represent him.  According to the

13    PSR, he does not have the ability to pay a fine within the

14    guidelines range.  He has no assets or liabilities.  And,

15    Your Honor, when he serves his sentence and he gets out,

16    25 years from now he will be in an even worse position

17    because of all the limitations of employment, his age.  So,

18    Your Honor, I understand that he has no --

19         THE COURT:  Well, you know, if he is indigent at

20    that time, then, as you say, he doesn't have to pay it, but

21    I don't know that.

22         MR. MORA:  So, Your Honor, that's basically our

23    objections for the record.

24         THE COURT:  Okay.  Your objections are noted.

25    Anything else?

 1                    MR. MORA:  Nothing further, Your Honor.

 2                    THE COURT:  Ms. Suarez, any counts to dismiss?

 3                    MS. SUAREZ:  Yes, Your Honor.  At this time the

 4       Government would like to move to dismiss the remaining count

 5       of the indictment, which is Count One.

 6                    THE COURT:  The remaining count in Criminal

 7       Number 23-11 against Luis Enrique Ojeda-Pena is dismissed.

 8       You are excused.

 9                    MR. MORA:  Thank you, Your Honor.

10                    MS. SUAREZ:  Thank you, Your Honor.

11                    (PROCEEDINGS ADJOURNED AT 11:01 A.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES DISTRICT COURT )
                                  )   ss.
2    OF PUERTO RICO               )

3

4

5                          **REPORTER'S CERTIFICATE**

6

7

8              I, LISA O'BRIEN, do hereby certify that the above

9    and foregoing, consisting of the preceding 26 pages,

10   constitutes a true and accurate transcript of my

11   stenographic notes and is a true and complete transcript of

12   the proceedings to the best of my ability.

13             Dated this 21st day of December, 2023.

14

15                              __S/Lisa O'Brien_____
                                Lisa O'Brien
16                              USDC Court Reporter
                                708-284-0021
17

18

19

20

21

22

23

24

25

Appendix 61

**CERTIFICATE OF SERVICE**

I ECF-filed this **APPENDIX TO APPELLANT'S OPENING BRIEF** today,

notifying the parties, including government counsel.

May 24, 2024.

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

**S/FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appeals Section

**S/JOANNA LEROY**
Assistant Federal Public Defender
First Circuit Bar No. 1204668
241 F.D. Roosevelt Ave.
San Juan, Puerto Rico 00918-2441
T: (787) 281-4922
F: (787) 281-4899
E: Joanna_LeRoy@fd.org