IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL No. 23-1804

UNITED STATES,
Appellee,

v.

LUIS ENRIQUE OJEDA-PENA,
Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRIEF FOR APPELLEE

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Maarja T. Luhtaru
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 772-3940

Table of Authorities ............................................................................... iv

Jurisdictional Statement ......................................................................... 1

Statement of the Issues on Appeal ......................................................... 2

Statement of the Case ............................................................................. 3

    I.   Ojeda's Sexual Abuse of his Minor Stepdaughter ........................... 3

    II.   Proceedings in District Court ..................................................... 6

Summary of the Argument .................................................................... 21

Argument ............................................................................................... 24

**I.      The district court did not err when it rejected the parties' request for a concurrent sentence and provided the state court an opportunity to weigh in on Ojeda's concurrency claim.**

    Issue ............................................................................................ 24

    Standard of Review .................................................................... 25

    Discussion ................................................................................... 26

**II.     The district court did not abuse its discretion when it imposed a supervised release term of life, which was statutorily permissible and within the guideline range.**

    Issue     ............................................................................................ 35

    Standard of Review .................................................................... 35

Discussion ....................................................................................35

**III.  The district court did not abuse its discretion when it imposed a special monetary assessment.**

Issue….. .....................................................................................40

Standard of Review .....................................................................40

Discussion ....................................................................................41

Conclusion....................................................................................48

Certificate of Compliance with Rule 32(a) ......................................49

Certificate of Service .....................................................................50

**FEDERAL CASES**

Commonwealth of Puerto Rico v. Sánchez-Valle, 579 U.S. 59 (2016) ...........34

Evangelista v. Secretary of Health & Human Servs.,
826 F.2d 136 (1st Cir. 1987).................................................................31

Fontanillas-López v. Bauzá Cartagena, 832 F.3d 50 (1st Cir. 2016) ..............40

Gall v. United States, 552 U.S. 38 (2007) ...............................................25

Gideon v. Wainwright, 372 U.S. 335 (1963).............................................45

Rita v. United States, 551 U.S. 338 (2007)....................................... 28-29

Setser v. United States, 132 S. Ct. 1463 (2012) ........................... 26, 32

United States v. Almonte-Reyes, 814 F.3d 24 (1st Cir. 2016) .........................32

United States v. Andino-Rodríguez, 79 F.4th 7 (1st Cir. 2023).......................25

United States v. Baptiste, 8 F.4th 30 (1st Cir. 2021) ..........................30

United States v. Booker, 543 U.S. 200, 264 (2005) ...................................... 26, 31

United States v. Carrasco-De-Jesús, 589 F.3d 22 (1st Cir. 2009) ....................33

United States v. Colón-De Jesús, 85 F.4th 15 (1st Cir. 2023) .................... 27, 36

United States v. De la Cruz-Gutiérrez, 881 F.3d 221 (1st Cir. 2018) .............40

United States v. Duarte, 246 F.3d 56 (1st Cir. 2001) .........................25

United States v. Fowler, 956 F.3d 431 (6th Cir. 2020) ......................................43

United States v. Graves, 908 F.3d 137 (5th Cir. 2018) ............................... 42, 46

United States v. Harrison, 899 F.3d 49 (1st Cir. 2018)..........................35, 37-39

United States v. Herman, 884 F.3d 705 (7th Cir. 2018) ....................................32

United States v. Hoffman, 847 F.3d 878 (7th Cir. 2017)............................31, 32

United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006)...................29, 44

United States v. Kelley, 861 F.3d 790 (8th Cir. 2017)............................42, 44-45

United States v. Martin, 520 F.3d 87 (1st Cir. 2008) .........................................25

United States v. Meek, 32 F.4th 576 (6th Cir. 2022) ..............................41, 43, 46

United States v. Morales-Veléz, 100 F.4th 334 (1st Cir. 2024).................27, 36

United States v. Mulero-Vargas, 24 F.4th 754 (1st Cir. 2022).........................33

United States v. Olsem, 37 F.4th 1354 (7th Cir. 2022) .....................................32

United States v. Otradovec, 72 F.4th 794 (7th Cir. 2023) .................................42

United States v. Procell, 31 F.4th 32 (1st Cir. 2022) ..............................40-42, 44

United States v. Pupo, 995 F.3d 23 (1st Cir. 2021) .....................................27, 36

United States v. Rentas-Muñiz, 887 F.3d 1 (1st Cir. 2018).........................33-34

United States v. Rivera-Carrasquillo, 933 F.3d 33 (1st Cir. 2019)...................47

United States v. Ruperto-Rivera, 16 F.4th 1 (1st Cir. 2021) .............................39

United States v. Santiago-Rivera, 744 F.3d 229 (1st Cir. 2014) .......................29

United States v. Shepherd, 922 F.3d 753 (6th Cir. 2019)..................................43

United States v. Valle-Colón, 21 F.4th 44 (1st Cir. 2021) ...................................3

United States v. Vargas-García, 794 F.3d 162 (1st Cir. 2015) ..................25, 35

# FEDERAL STATUTES

18 U.S.C. § 2251(a) ........................................................................6

18 U.S.C. § 2251(e) ........................................................................6

18 U.S.C. § 2422(b) ........................................................................6

18 U.S.C. § 3014 .....................................................................passim

18 U.S.C. § 3231 ............................................................................1

18 U.S.C. § 3553(a) ........................................................... 16, 26, 29

18 U.S.C. § 3573 ...........................................................................43

18 U.S.C. § 3583(e)(1) ..................................................................39

18 U.S.C. § 3583(k) ................................................................ 35, 38

18 U.S.C. § 3584 ...........................................................................30

18 U.S.C. §§ 3014(g) .............................................................. 41, 45

18 U.S.C. §§ 3613(b) ....................................................................41

28 U.S.C. § 3742(a) ........................................................................1

# FEDERAL RULES

Fed. R. App. P. 4(b)(1)(A)(i) .........................................................1

# FEDERAL SENTENCING GUIDELINES

U.S.S.G. § 4B1.5(a) .....................................................................16

# FEDERAL REGULATIONS

28 C.F.R. Part 545 ........................................................................45

# JURISDICTIONAL STATEMENT[1]

This is a sentencing appeal stemming from the judgment entered in Criminal Case No. 23-cr-011 in the District of Puerto Rico. (DE 34). The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction of this sentencing appeal under 28 U.S.C. § 3742(a).

The district court sentenced Enrique Luis Ojeda-Peña and entered its judgment on September 13, 2023. (DE 34). Ojeda filed a timely notice of appeal. (DE 36); *see* Fed. R. App. P. 4(b)(1)(A)(i).

---

[1] Citations to the record will be as follows: AA (Appellant's Appendix); AB (Appellant's Brief); DE (Docket Entry or Entries in the District of Puerto Rico Criminal Case No. 23-cr-011); SA (Appellant's Sealed Appendix).

I.     Can Ojeda show that the district court reversibly erred when the court, within its discretion, did not grant the parties' request for a concurrent sentence and left open the possibility that the state court could do so?

II.    Can Ojeda show that the district court reversibly erred when it imposed a supervised release term of life, which was within the statutory range and recommended by the guidelines for the type of offense Ojeda committed?

III.   Can Ojeda show that the district court clearly erred in imposing a special monetary assessment?

**I.     Ojeda's Sexual Abuse of his Minor Stepdaughter**[2]

Ojeda sexually abused his nine-year-old stepdaughter and asked her to send him sexually explicit videos. (SA at 4-5).

The minor's mother was in a relationship and had lived with Ojeda for approximately six years. (SA at 5). The mother had two daughters, ages six and nine, who also lived with them. (SA at 5). The girls' mother worked two jobs and Ojeda, who was unemployed, cared for the two daughters. (SA at 5). Ojeda's relationship with the mother ended at the end of June 2022. (SA at 5).

In August 2022, the mother discovered an open webpage with pornography on her 9-year-old daughter's tablet when she was checking it because a video game was not downloading properly. (SA at 4). The mother found pornographic videos of stepsiblings, stepfathers with stepchildren,

---

[2] Because Ojeda pleaded guilty, the facts in this brief come from his plea agreement, the undisputed presentence report, the change-of-plea colloquy, and the transcript of the sentencing hearing. *United States v. Valle-Colón*, 21 F.4th 44, 46 (1st Cir. 2021).

and stepmoms. (SA at 4). She then found messages from Ojeda to her daughter asking her daughter for sexually explicit videos. (SA at 4).

When the police officers interviewed the minor, she told them that her stepfather Ojeda put his hand on her genital area, penetrated her, and asked her for videos. (SA at 4). The minor explained that Ojeda showed her pornography and videos of him having anal sex with her mother's friend. (SA at 4). Ojeda also called his stepdaughter on the tablet through video call and masturbated. (SA at 4). She explained that Ojeda stopped sexually assaulting her because he left on a trip with his family. (SA at 4).

After Ojeda was arrested, the officers found on his phone the following conversation:

> Minor tablet – 'Hi daddy[!]'
> 'Luis Ojeda'- 'Hi baby. What are you doing[?]'
> Minor tablet- 'Nothing bored without playing with anyone[.]'
> 'Luis Ojeda'- 'Ohhh[.]'
> Minor tablet- 'And you[?]'
> 'Luis Ojeda'- 'I am watching the page I showed you. I'm in the bathroom to take a shower. But I am watching the cell first[.]'
> Minor Tablet- 'ok. I.'
> 'Luis Ojeda'- 'Where are you. I miss you[.]'
> Minor Tablet- 'I inserted my little finger in my vulva and entered it a bit.'
> 'Luis Ojeda' – 'That's it!'
> Minor tablet –'Yes.'

'Luis Ojeda' –'You have to record it to watch you.'
Minor tablet –'ok but mom is all over the place but at nighttime, no.'
'Luis Ojeda' – 'Ok', 'to see/watch you', 'yes that way I can do something here[.]'

(SA at 4-5). Ojeda provided a statement after his arrest. He claimed that the eldest daughter always asked him about sex, and that he would then show her and "explain with the hands." (SA at 5). He contended that she "was curious and he showed her to masturbate and touch herself and him" and that "it was always with her because she was curious." (SA at 5). He also showed her what a vibrator was and how to use it. (SA at 5). In addition, he admitted to putting his erect penis in the nine-year-old's vagina "but because it hurt, she pushed it out." (SA at 5). And, after he left the home, he requested videos of her stepdaughter masturbating. (SA at 5). Based on the government's stipulation of facts, from July 9 to August 2, 2022, Ojeda induced the minor victim to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. (SA at 5).

Ojeda later provided he was repentant because he missed his freedom and children, and that he did not think about the offense or the sentence often. (SA 6). He admitted that he had "not reflected about the impact his

actions had on the victim or her wellbeing." (SA 6). Ojeda's mother also stated that Ojeda had told her that "his eldest stepdaughter had become terrible as she [was] having an awakening," and "that he had found her masturbating and had showed her a movie to educate her." (SA 12). She said that she believed that Ojeda's abuse of the nine-year old girl was "the fault of the girl and her mother," that the girl's mother was negligent, and that sexual education should depend on the mother. (SA 12).

The Commonwealth of Puerto Rico charged Ojeda with negligence towards a minor; three counts of sexual assault of a minor; and sexual lewd acts with a child. (SA 9). These charged stemmed from Ojeda's conduct against his stepdaughter during the month of June 2022, when he put the minor's hand on his penis to masturbate, penetrated her by putting his finger and his penis in her vagina, and put his penis in her mouth. (SA 9-10).

## II.    Proceedings in District Court

A federal grand jury charged Ojeda with (1) coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b), and (2) attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). (AA 9-10).

Specifically, Ojeda was charged with offense conduct that occurred between July 9, 2022, through August 2, 2022. (AA 9-10).

Ojeda pleaded guilty pursuant to a plea agreement to count two of the indictment. (AA 11-24). The parties agreed to recommend a sentence equal to the lower end of the applicable sentencing guideline range at a total offense level of 37 when combined with the criminal history category as determined by the district court. (AA 14). The parties also agreed to request a term of supervised release as mandated by law. (AA 14). In addition, they agreed to recommend that the federal sentence be served concurrently with the related state sentence. (AA 14).

The parties based their recommendation on a total offense level of 37, which included a base offense level of 32; a four-level increase because the offense involved a minor who was younger than 12; a two-level increase because the offense involved the commission of a sexual act or contact; a two-level increase because the minor was in the custody and care of the defendant; and a three-level decrease for acceptance of responsibility. (AA 13). The parties did not agree to Ojeda's criminal history category. (AA 14). Ojeda agreed that "the [district court] [wa]s not required to accept [the plea

agreement's] recommended Guideline calculations" . . . . and that "the sentence imposed will be determined solely by the [district court]." (AA 12-13). Ojeda also agreed that he faced a maximum penalty under the statute of thirty years' imprisonment and supervised release term of life. (AA 12). In addition, he agreed that he faced a special assessment of $5,000 under 18 U.S.C. § 3014. (AA 12).

At the change of plea hearing, the district court clarified with the government the parties' understanding that the state case was related. (DE 40 at 10). Ojeda also agreed that the plea agreement was a recommendation to the district court and that the court could impose a sentence that was more severe or less severe than any sentence he may anticipate. (DE 40 at 11-12).

After the district court accepted Ojeda's guilty plea, the probation office filed the PSR with the district court. (SA 1-19). The report discussed that Ojeda had been in a relationship with the victim's mother and lived with the family for approximately six years (from when the victim was about three years old). (SA 5, 10). The report detailed Ojeda's relationship with the victim (SA 4-5), including that he masturbated in front of the nine-year-old, put his erect penis in her vagina, and requested sexually explicit videos of

her. (SA 5). Based on Ojeda, the abuse began in June 2022. (SA 5). Ojeda then said he did not see the victim again after she moved in with her father. (SA 5). He also said that his and the mother's relationship ended at the end of June 2022. (SA 5). But he admitted that he thereafter called the victim on the tablet and requested videos of her masturbating. (SA 5). The report also included the victim impact statement from the minor victim's mother that described how her daughter had been negatively affected by Ojeda's offense. (SA 6). She described that her daughter constantly worried about everything, and that she had "nightmares that [Ojeda] will be released from prison and go back to find her." (SA 6). The mother stated that her family did not wish to have any contact with Ojeda or his family and that they "hope he will get the highest possible sentence." (SA 6).

Next, in calculating the advisory guideline range, the probation officer provided a total offense level of 43. (SA 8). The report included three two-level enhancements, one of which was not stipulated by the parties: one because the offense involved the commission of a sexual act; one because the minor was in the care of Ojeda; and one because Ojeda used a computer or interactive computer service to solicit the minor to engage in sexually

explicit conduct. (SA 7). In addition, the report included a four-level enhancement because the offense involved a minor who had not attained the age of 12. (SA 7). Further, because Ojeda engaged in a pattern of activity involving prohibited sexual conduct (from July 9 to August 2, 2022), the report applied a 5-level enhancement under Section 4B1.5(b)(1). (SA 7).

The report also noted Ojeda's criminal history. He had a prior conviction for receiving and transporting stolen goods, illegal appropriation, and damages. (SA 8). In addition, the report documented the pending charges in San Juan Superior Court for Ojeda's physical abuse of his step-child. (SA 9). As per the PSR, the conduct underlying these charges occurred during the month of June 2022, when Ojeda put the minor's hand on his penis to masturbate, penetrated her vagina with his finger and his penis, and introduced his penis in her mouth. (SA 9-10). The PSR noted these charges involved the same victim as in the instant case, that the plea agreement considered it relevant conduct, and that the sentencing in the state case was forthcoming. (SA 10).

The report also provided that, based on Ojeda's financial profile, "it appears that he does not have the ability to pay a fine within the advisory

guideline range." (SA 15). The probation officer noted that, in making its determination regarding Ojeda's inability to pay a fine within the guideline range, it "considered the [district court's] possible imposition of the $5,000 Victims of Trafficking assessment and restitution" on Ojeda. (SA 15 n.7). It also provided that, if the court finds that a fine within the required guideline range was not viable, it may impose a lesser fine or waive the imposition of a fine under U.S.S.G. § 5E1.2(e). (SA 15).

The probation officer then provided the sentencing options. (SA 15-16). Against the backdrop of a total offense level of 43 and a criminal history category of I, the advisory guideline range was life imprisonment. (SA 15). But because the maximum statutorily authorized sentence was thirty years, Ojeda's guideline term was 360 months. (SA 15). As to supervised release, both the statutory and guideline provisions called for a term from five years to life. (SA 15). Next, under the guidelines, the fine range for the offense was $50,000 to $250,000. (SA 16). In addition, the probation officer stated that, under the "Victims of Trafficking Act[,] an assessment of $5,000 shall be assessed by the [district court]," which applies to any non-indigent person. (SA 16 & n.8).

Neither party filed formal objections to the report.

Ojeda then filed a sentencing memorandum. (SA 25-34). He asked the court to accept the plea agreement and impose an imprisonment sentence of 210 months, to be served concurrently with the anticipated relevant conduct state criminal sentence. (SA 25). He explained that he was charged with sexual aggression in the related state case, pleaded guilty to several counts of lewd acts for a joint sentence recommendation of 15 years of imprisonment, and was awaiting sentencing. (SA 27). He reiterated that the anticipated 15-year imprisonment was based on relevant conduct to the instant case, in that in both cases the victim was the same, the offenses occurred within the same timeframe, the sexual acts' guidelines enhancements were the same sexual acts charged in the state court, and all criminal acts were reasonably related. (SA 27). Thus, Ojeda contended that, under U.S.S.G. § 5G1.3(c), "[t]he sentence for instant offense shall be imposed to run concurrently to the anticipated state term of imprisonment." (SA 27).

Ojeda next asked the district court not to apply the additional enhancements provided in the PSR. (SA 27-30). He recognized that the two

additional guidelines enhancements—use of a computer and pattern of prohibited sexual conduct—were legally applicable but asked the court not to consider them because he claimed they lacked individualized scientific and empirical data, were unreliable, and did not reflect historical intent or served their purpose. (SA 27-30). Ojeda then pointed to his mitigating factors, such as his early acceptance of responsibility, depression, and the support of his family. (SA 30-32). He also asked the court to consider his education history, such as his associate degree in culinary arts with him being an excellent chef, his three years of criminal justice studies, and a degree in auto electromechanics. (SA 32). In a footnote, Ojeda moved the court to waive the $5,000 special assessment under 18 U.S.C. § 3014, noting it was assessed only on non-indigent person. (SA 33 n.4). He provided that he had been appointed counsel from the Federal Public Defender and that the PSR had determined that, based on his financial profile, he did not have the ability to pay the fine within the advisory guideline range. (SA 33 n.4).

At the sentencing hearing, Ojeda first addressed the district court. (AA 36). He asked the court to adopt the plea agreement reached by the parties and impose a 210-month sentence. (AA 36). He also provided that he was

facing state criminal charges and then requested the sentence in the instant case to be served concurrently with the anticipated state sentence. (AA 36). Ojeda explained that both cases were "relevant conduct" and dealt with "the same minor, same time frame, related acts." (AA 36). He also asked for supervised release term of five years. (AA 36).

Ojeda then explained that he did not object to the additional enhancements in the PSR because they legally applied but that, as in his sentencing memorandum, he disagreed with these enhancements. (AA 36-37). He also highlighted his mitigating circumstances, such as his personal history and his early acceptance of responsibility. (AA 37-38). He again highlighted that he was facing a 15-year anticipated sentence in the state court and that he had already pleaded guilty in state court as well. (AA 39).

For its part, the government stood by the recommendation in the plea agreement and requested a 210-month sentence to be served concurrently with the state sentence. (AA 39-40).

The minor victim's mother then provided a statement to the court. (AA 40). She stated that both her and her daughter had gone through a lot and that they were "not comfortable with the idea that [Ojeda] could be released

onto the streets some day." (AA 41). She explained that Ojeda not only caused harm to her daughter but to her as well—both physical and psychological harm. (AA 41). She said that Ojeda never cared about anything but sex, women, and him being happy. (AA 41). The victim's mother then indicated the pain she was feeling by having placed trust in Ojeda and stated that there was "no way that [Ojeda] did things thoughtlessly . . . [he] . . . indeed k[new] what he was doing." (AA 42).

The mother noted that her daughter had constant nightmares of running into Ojeda and was afraid of Ojeda's mother. (AA 42). She added that Ojeda gave her nine-year-old daughter a venereal disease. (AA 42). She ended by stating that she never wanted to see Ojeda again and hoped he stayed in prison forever. (AA 42). Ojeda then provided an allocution stating he was remorseful and apologized. (AA 43).

Next, the district court began its sentencing analysis by reviewing the relevant guidelines provisions. (AA 43-46). It agreed with the PSR's guideline calculation, providing that Ojeda had a base offense level of 32. (AA 43-46). Ojeda then received two two-level increases and one four-level increase under U.S.S.G. § 2G2.1(b) for his offense conduct and a four-level

increase under U.S.S.G. § 4B1.5(a) for his pattern of activity for prohibited sexual conduct, as a "repeat and dangerous sex offender against minors." (AA 43-44). He also received a three-level reduction for acceptance of responsibility. (AA 45). Thus, his total offense level was 44, which, based on the guidelines, was treated as 43. (AA 45). Based on a total offense level of 43 and Criminal History Category of I, the guideline range was life imprisonment, but the maximum statutory term was 360 months' imprisonment. (AA 46). The district court also highlighted that Ojeda faced a fine range of $50,000 to $250,000 and a supervised release term from five years to life. (AA 46).

The court then noted it had considered the salient 18 U.S.C. § 3553(a) sentencing factors, the PSR, the plea agreement, Ojeda's sentencing memorandum, the parties' arguments, statements by the minor victim's mother, and Ojeda's allocution. (AA 46). The court highlighted it had considered Ojeda's education and employment history, Ojeda's prior mental health issues, and his substance abuse. (AA 46). The court also discussed Ojeda's offense, such as watching pornographic movies with his nine-year-old stepdaughter, showing "her how to masturbate, made her masturbate

him, penetrated her, made video calls in which he masturbated for her, and requested videos from her masturbating through Messenger chats." (AA 46-47). It then discussed the minor's interview with the police where she had noted that Ojeda had shown her videos of Ojeda having anal sex with her mother's friend and that Ojeda had shown her what a vibrator was and how to use it. (AA 47).

The district court then considered the parties' joint recommendation of 210 months, commenting that it did not fall within the guidelines range. (AA 47). It determined that the joint recommendation did not reflect the seriousness of the offense, promote respect for the law, protect the public from further crimes by Ojeda, or address the issues of deterrence and punishment. (AA 47). Nevertheless, the court determined that a variant sentence below the 360 months was warranted. (AA 47-48). It noted it had considered Ojeda's employment record, his family ties and responsibility, the early acceptance of responsibility, the plea agreement, and also the heinous nature of Ojeda's offense. (AA 48). Having balanced the relevant sentencing considerations, the court determined that Ojeda should receive a sentence of 300 months. (AA 48). And, with regard to the parties' request for

the sentence to run concurrently with the anticipated state sentence, although the court agreed it was relevant conduct to this case (AA 45-46), it did not grant the parties' request. (AA 48). Instead, it stated that, "[w]hether this term of imprisonment would run concurrently or consecutively with the sentences to be imposed by the Commonwealth in Cases KLE2022G0369, KIS2002G0058, and KIS2022G0061 will be left to the judge of the Commonwealth Court." (AA 48).

The district court imposed a supervised release term of life. (AA 48). In addition, after considering Ojeda's financial condition, the court did not impose a fine. (AA 53-54). It then imposed the $5,000 monetary assessment under 18 U.S.C. § 3014. (AA 54).

Ojeda objected to the sentence as both procedurally and substantively unreasonable. (AA 55). Ojeda recognized that the court had left to the Commonwealth judge to determine whether these offenses would run concurrently or consecutively. (AA 57). Ojeda objected to that determination because, pursuant to § 5G1.3(c), "the sentence for the instant offense shall be imposed to run concurrently to the anticipated state term of imprisonment." (AA 57). Ojeda then noted the court had the authority and, according to the

guidelines, "it is not only leaving it to the state judge's discretion" but the district court "shall impose this sentence to run concurrently." (AA 57-58).

Next, Ojeda objected to the court's decision to sentence him to a supervised release term of life as excessive and unreasonable. (AA 58). Ojeda noted "we don't know what's going to happen at state court, but just only considering the 25 years that [the court] imposed . . . he will be out when he is 62." (AA 58). When Ojeda noted the guidelines recommended five years, the court clarified that the recommendation was at least five years and up to life. (AA 58).

Finally, Ojeda objected to the $5,000 assessment. (AA 58-59). He argued that, at that moment, he was an indigent person, pointing to the fact that the Public Defender was appointed to represent him and that the PSR determined that he did not have an ability to pay a fine within the guideline range. (AA 59). And he indicated that, when he gets out, he would be in a worse position because of his age and limitations of employment. (AA 59). The court responded that it did not know if Ojeda will be indigent or non-indigent at the time of release, that he can raise these issues with the U.S.

Attorney Financial Litigation Unit when he gets out, and that if Ojeda is indigent after release, then he does not have to pay the assessment. (AA 59).

This appeal ensued.

Ojeda's sentence should be affirmed. First, the district court did not plainly or otherwise reversibly err by exercising its discretion to impose a federal sentence that would run consecutively by default to Ojeda's pending state sentence, absent the state court's imposition of concurrent sentences. When a subsequent state sentence is anticipated, a district court has broad discretion to order the federal sentence be served concurrently or consecutively, or to forbear from entering such an order. And here, the district court correctly recognized it had discretion to decide whether the federal sentence would run concurrently or consecutively to the anticipated state court sentence and, considering the facts surrounding the offense, provided the state court an opportunity to decide whether incremental punishment was warranted. Implicit in that order was a recognition that Ojeda's sentence would run consecutively in the event the state court elected not to impose concurrent state sentences. There was no error.

Next, the district court did not plainly err or otherwise abuse its discretion in determining that a supervised release term of life was warranted. The district court ably explained its reasons for imposing a downwardly variant sentence followed by a life term of supervised release.

21

A life term of supervised release is within the range recommended by the guidelines for sex offenses, such as Ojeda's, and is statutorily permissible. Further, the record demonstrates that the district court considered the § 3553(a) factors, defendant's sentencing memorandum addressing those factors, the victim's mother's statements, and the arguments made by counsel during the sentencing hearing. Accordingly, there was no error in the district court's determination and Ojeda's sentence for supervised release should be affirmed.

Imposition of the monetary assessment was likewise permissible. Ojeda was convicted of attempted production of child pornography. Accordingly, the district court was required to impose a special assessment pursuant to 18 U.S.C. § 3014, if it concluded that Ojeda was non-indigent. The district court determined it was unable to anticipate whether Ojeda would be indigent and incapable of paying the special assessment after he had served his sentence. The district court indicated its willingness to reconsider the matter, in effect giving Ojeda the ability to demonstrate that he was indigent and could not pay the special monetary assessment once released. Thus, there was no error.

This Court should therefore affirm the district court's judgement and sentence.

## I.    The district court did not err when it rejected the parties' request for a concurrent sentence and provided the state court an opportunity to weigh in on Ojeda's concurrency claim.

<u>**ISSUE**</u>

Ojeda argues that the district court failed to consider U.S.S.G. § 5G1.3(c)'s mandate and erred by declining to run his federal sentence concurrently with his anticipated relevant conduct state sentences. (AB 11-19). Namely, he contends that the guidelines make clear that the district court should have imposed the federal sentence to run concurrently with his state sentences. (AB 12-13). He then argues that the district court erred by not explaining its failure to address the concurrency issue, and that the court did not take the § 5G1.3(c) into account or consider and weigh the factors set forth in § 3553(a). (AB 13-17). He argues public policy supported imposing concurrent sentences. (AB 15-17). And he contends that the district court erred when it failed to address why it rejected his concurrency arguments. (AB 17-19).

## Standard of Review

This Court normally reviews a procedural-reasonableness challenge "under a multifaceted abuse-of-discretion standard whereby [it] afford[s] de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay[s] the court's factfinding for clear error, and evaluate[s] its judgment calls for abuse of discretion." *United States v. Andino-Rodríguez*, 79 F.4th 7, 31 (1st Cir. 2023) (citation omitted); *see also Gall v. United States*, 552 U.S. 38, 45-46 (2007); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008).

When a defendant fails to preserve a specific argument at sentencing, review is for plain error only. *United States v. Vargas-García*, 794 F.3d 162, 166 (1st Cir. 2015). To prevail under plain error, a defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001)).

## Discussion

The district court did not err when it declined to run Ojeda's federal attempted production of child pornography sentence concurrently to his anticipated but not yet imposed state court negligence, sexual assault, and sexual lewd act with a child sentences and left the possibility of concurrency for the Commonwealth Court.

The sentencing guidelines are discretionary, not mandatory. *United States v. Booker*, 543 U.S. 200, 264 (2005). And a sentencing judge has discretion to order that a federal sentence run concurrently or consecutively to an anticipated state court sentence. *Setser v. United States*, 132 S. Ct. 1463, 1468 (2012). In exercising its discretion, the court must consider the broad statutory factors set forth in 18 U.S.C. § 3553(a). *Id.* at 1470-71.

U.S.S.G. § 5G1.3 provides guidance as to how a district court should impose sentence when the defendant is subject to an undischarged or "anticipated state term of imprisonment." U.S.S.G. § 5G1.3(c) applies when a term of imprisonment is anticipated to result for conduct that is "relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct)." In that case,

the guidelines recommend that the federal sentence "shall be imposed to run concurrently to the anticipated [state] term of imprisonment."

As a preliminary matter, Ojeda only preserved one of the arguments he makes on appeal—namely, that U.S.S.G. § 5G1.3(c) mandated the district court to issue a concurrent sentence. (*Compare* AB 11-19, *with* AA 57-58 (arguing only that the district court should have issued a concurrent sentence under that guideline provision)). Ojeda did not raise any other claims before the district court, such as the district court's alleged failure to further explain or address the concurrency issue, that the court did not take the § 5G1.3(c) into account, that it did not consider and weigh the factors set forth in § 3553(a), or Ojeda's public policy arguments. (*See* AB 11-19). These claims are therefore new, not preserved, and reviewed under plain error. *See United States v. Colón-De Jesús*, 85 F.4th 15, 25 (1st Cir. 2023) (explaining that a general objection was insufficient "to give the district court notice of the specific issue raised on appeal" and therefore plain error review applied); *see also United States v. Pupo*, 995 F.3d 23, 29 n.5 (1st Cir. 2021) (explaining that "a claim of error for appeal" is "successfully preserve[d]" when an objection is made that puts the sentencing court on notice of "the claimed error" in sentencing). And because Ojeda "fails to even mention plain error, let alone

argue for its application here," he "definitively waives these arguments." *United States v. Morales-Veléz*, 100 F.4th 334, 345 (1st Cir. 2024) (citation omitted).

In any event, there is no reversible error in the district court's determination. The court considered U.S.S.G. § 5G.1.3(c) and acted within its discretion to reject Ojeda's concurrency argument. The concurrency arguments pursuant to § 5G.1.3(c) were at the front and center before the district court. Indeed, the parties had negotiated for a recommendation of concurrent sentences as part of the plea agreement (AA 14), the PSR twice mentioned the parties' agreement in this regard (SA 3, 10), Ojeda argued in his sentencing memorandum that, under U.S.S.G. § 5G.1.3(c), the guidelines mandated a concurrent sentence (AA 27), and both parties again requested a concurrent sentence at the sentencing hearing. (AA 36, 40). When issuing its sentence, the district court properly calculated the guidelines range, noted that the anticipated state court sentence was for relevant conduct, and acknowledged that it had read and considered the plea agreement, the parties' arguments, the PSR, and Ojeda's sentencing memorandum. (AA 43-46). But notwithstanding the parties' arguments, the district court—recognizing its discretion—declined to follow the parties' recommendation

and chose not to issue a concurrent sentence. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (noting that the sentencing judge satisfies his duty to explain the sentence when he "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority"); *see also United States v. Jimenez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the [PSR] with what the judge did."), *abrogated on other grounds by Rita*, 551 U.S. 338.

What is more, in deciding the issue, the district court evaluated the § 3553(a) factors, as it was required to do. Indeed, the court said it had considered the relevant factors under 18 U.S.C. § 3553(a), a statement that "is entitled to significant weight." *United States v. Santiago-Rivera*, 744 F.3d 229, 233 (1st Cir. 2014); (*see* AA 46). In doing so, the court discussed the facts underlying Ojeda's offense. It recognized that Ojeda had engaged in a pattern of activity over a period of time against his nine-year-old victim, such as watching pornographic movies with her, penetrating her, making video calls in which he masturbated for her, and requesting sexually explicit videos from her. (AA 44-45, 46-47). The court then considered Ojeda's mental

health history, employment record, his family ties and responsibility, the plea agreement, the early acceptance of responsibility, and juxtaposed it with the heinous nature of Ojeda's offense. (AA 46-48). As a result, the court agreed with the parties that a downward variance from the statutory maximum was appropriate but disagreed with the extent of the recommended variance. (AA 48). And after providing a downwardly variant sentence, the court chose not to order a concurrent sentence notwithstanding the parties' request. (AA 48). Still, it did not foreclose Ojeda from raising his concurrency request before the state court. After weighing the sentencing factors, including the heinous nature of the offense and the statements from the victim's mother, the district court left open the possibility for Ojeda to convince the Commonwealth Superior Court to issue concurrent sentences when it was sentencing him for the state charges. (AA 45-46, 48).

The district court knew that, absent any ruling to the contrary, the federal sentence would run consecutively with the later-issued state court sentence. Indeed, under 18 U.S.C. § 3584, "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." And judges are presumed to "know and correctly apply the law in making their decisions." *United States v. Baptiste*,

8 F.4th 30, 38 (1st Cir. 2021) (internal quotation marks and citation omitted). In other words, it was implicit in the district court's determination that the sentences would run consecutively unless the state court ruled otherwise.[3] The district court had discretion to make that determination and there was no error.

Contrary to Ojeda's suggestion (and as to Ojeda's sole preserved argument on appeal), the guidelines do not require sentencing courts to issue concurrent sentences in circumstances like his. (*See* AB 12-13, 16). Despite 5G1.3 "shall" language, the district court had discretion to determine whether the sentence should run consecutive to or concurrent with the state sentence. *See United Booker*, 543 U.S. at 264; *see also United States v. Hoffman*, 847 F.3d 878, 882 (7th Cir. 2017) ("The text of § 5G1.3(c) is straightforward, as is its purpose. When sentencing a federal defendant for certain criminal conduct, a district judge should take note of anticipated state

---

[3] On appeal, Ojeda has provided the subsequent Commonwealth court judgement and sentence in his anticipated state case. But because this matter was not brought to the attention of the district court, it cannot be considered on appeal. *See Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). In any event, the judgement does not provide a ruling on concurrency, thus indicating that the Commonwealth judge did not find persuasive Ojeda's arguments for a concurrent sentence.

terms of imprisonment for relevant conduct, and, *where appropriate*, impose a concurrent sentence.") (emphasis added). What is more, the Supreme Court in *Setser* acknowledged that district courts have the discretion to order federal sentences to run consecutively to or concurrently with anticipated state sentences, or to forbear from entering such an order. *Setser*, 566 U.S. at 234-35 & 242 n.6; *see also United States v. Olsem*, 37 F.4th 1354 (7th Cir. 2022) (reiterating that "a sentencing court's discretion under *Setser* includes the discretion not to decide the relationship between an imposed federal and anticipated state sentence") (citing *United States v. Herman*, 884 F.3d 705 (7th Cir. 2018), and *Hoffman*, 847 F.3d 878); *cf. United States v. Almonte-Reyes*, 814 F.3d 24, 29 (1st Cir. 2016) (recognizing the principle as "undoubtedly true" that "when it comes to sentencing, later is always better because the decisionmaker has more information") (internal quotation marks and citation omitted). Thus, the district court did not err when it exercised its discretion and withheld settling the matter.

As to his unpreserved arguments, Ojeda's claim that the district court erred by not adequately addressing the concurrency issue is contrary to the record. (AB 13-15, 18-19). The district court addressed the issue. (AA 48). As noted above, the concurrency issue was well-argued before the district court,

and the court specifically acknowledged the pending relevant conduct state sentences and concurrency/consecutiveness when imposing the sentence. As the record demonstrates, the court rightfully declined to follow the parties' recommendation. *See United States v. Mulero-Vargas*, 24 F.4th 754, 759 (1st Cir. 2022) (noting the plea agreement's sentence recommendations advocated by the parties "were merely precatory" and that, when imposing a sentence, a "district court [was] not bound by the parties' [sentencing] recommendations"). Indeed, by declining to run the sentences concurrently, as the parties had requested, the court appropriately recognized that it was not required to do so under the guidelines. (*Contra* AB 14). And, notwithstanding Ojeda's appellate contentions (AB 14-15, 17), "[i]t is of no moment that the district court did not explicitly reference section 5G1.3 . . . . What counts is not whether a sentencing court explicitly mentions a guideline provision but, rather, whether the court correctly applied that provision." *United States v. Rentas-Muñiz*, 887 F.3d 1, 5 n.3 (1st Cir. 2018) (internal quotation marks and citation omitted).

Similarly, the record belies Ojeda's unpreserved contention that the court failed to consider or weigh the § 3553(a) factors. (AB 14-15). "The court's statement of its reasons for its choice of a sentence plainly takes into

account the section 3553(a) factors." *United States v. Carrasco-De-Jesús*, 589 F.3d 22, 29 (1st Cir. 2009) (addressing a similar claim regarding the application of § 5G1.3(b)); *see also United States v. Rentas-Muñiz*, 887 F.3d 1, 5 (1st Cir. 2018) (noting the sentencing court accurately determined the applicable guideline range and analyzed the section 3553(a) factors and, after weighing the factors, it "opted to impose a below-the-range sentence, but decreed that this downwardly variant sentence should run consecutive to the undischarged state sentences"). Here, as noted above, the court thoroughly considered the relevant sentencing factors. (AA 44-48). Therefore, Ojeda's contradictory assertion fails.

Next, to the extent Ojeda voices concerns about duplicative consideration of the same criminal conduct, (AB 15-16), "the Double Jeopardy Clause bars the Federal Government and Puerto Rico from successively prosecuting a defendant on like charges for the same conduct." *Commonwealth of Puerto Rico v. Sánchez-Valle*, 579 U.S. 59, 66 (2016). Thus, if Ojeda's successive prosecution had involved "like charges for the same conduct," these charges would have been dismissed. *Id.* And, as to Ojeda's "failure to address" claim (AB 17-19), as noted above, the court considered and weighed the parties' arguments on the issue and the § 3553(a) factors

and determined, within its discretion, not to order a concurrent sentence. But it left open the possibility for Ojeda to have the Commonwealth Court weigh in on the issue when sentencing him. Hence, Ojeda's arguments on appeal do not demonstrate error in the district court's discretionary determination and the Court should uphold his sentence.

## II. The district court did not abuse its discretion when it imposed a supervised release term of life, which was statutorily permissible and within the guideline range.

### Issue

Ojeda challenges the district court's imposition of a supervised release term of life upon his release as unreasonable. (AB 27-29).

### Standard of Review

This Court reviews the imposition of supervised release for an abuse of discretion. *See United States v. Harrison*, 899 F.3d 49, 52 (1st Cir. 2018). When a defendant fails to preserve a specific argument at sentencing, review is for plain error. *Vargas-García*, 794 F.3d at 166.

### Discussion

Ojeda challenges the district court's imposition of lifetime supervised release, but his arguments do not carry the day. The statutory range

Congress authorized for the supervised release in cases like this was a five-year minimum and life maximum. (SA 15 (citing 18 U.S.C. § 3583(k)). The advisory guideline range was likewise five years to life. (SA 15 (citing U.S.S.G. § 5D1.2(b)(2)). Ojeda argues that the district court committed procedural error by failing to explain the reasons for its decision to impose a supervised release of life and that the record warranted a lower supervised release term. (AB 26-29). These claims are unavailing.

As a threshold matter, Ojeda never argued before the district court that the court failed to sufficiently explain the reasons for its decision. (*Compare* AB 27-28, *with* AA 58 (arguing only that the supervised release term was excessive and unreasonable). As a result, plain error review applies. *See Colón-De Jesús*, 85 F.4th at 25 (explaining that a general objection was insufficient "to give the district court notice of the specific issue raised on appeal" and therefore plain error review applied); *see also Pupo*, 995 F.3d at 29 n.5. And because Ojeda "fails to even mention plain error, let alone argue for its application here," he "definitively waives these arguments." *Morales-Veléz*, 100 F.4th at 345.

In any event, there is no error, plain or otherwise, in the district court's determination. As noted above, the district court properly calculated the

guidelines range at the sentencing hearing, considered the arguments and evidence before it, and discussed the application of the § 3553(a) factors in fashioning Ojeda's particular sentence. (AA 43-48). The district judge weighed the mitigating factors together with the heinous nature of the offense and granted a downward departure from the guideline imprisonment of 360 months, sentencing Ojeda to 300 months in prison. (AA 47-48; *see* AA 46-47 (describing the pattern of Ojeda's activity, such as showing his nine-year-old stepdaughter "how to masturbate, made her masturbate him, penetrated her, made video calls in which he masturbated for her, and requested videos from her masturbating through Messenger chats")). The court also heard from the victim's mother, who indicated the victim had nightmares about Ojeada's release from prison and feared he would find her. (AA 42). In doing so, the court reasoned that the sentence of 300 months, which was followed by a lifetime term of supervised release, best reflected the seriousness of Ojeda's offense, promoted respect for the law, protected the public from additional crimes by Ojeda, and addressed the issues of deterrence and punishment. (AA 47-48). Thus, the record shows that, in crafting this sentence, the judge took note of both Ojeda's individual characteristics and the particular offense conduct in this case. *See Harrison*,

899 F.3d at 52 (addressing a similar claim and noting that the Court "allow[s] a good deal of leeway in reviewing the adequacy of a district court's explanation") (internal quotation marks and citation omitted).

In addition, the term of supervised release was within the guidelines range and within the permissible statutory authorization. Indeed, as noted above, a lifetime term of supervised release is authorized by statute and within the sentencing guidelines range. *See* 18 U.S.C. § 3583(k) ("[T]he authorized term of supervised release for any offense under section . . . 2252A . . . is any term of years not less than 5, or life."); *see also* U.S.S.G. § 5D1.2 ("[T]he length of the term of supervised release . . . may be up to life, if the offense is . . . a sex offense."). And "[t]he fact that a sentence is within the guidelines range significantly increases the likelihood that the sentence is a reasonable one." *Harrison*, 899 F.3d at 53.

Furthermore, the U.S. Sentencing Commission specifically included an advisory policy statement in the guidelines manual that suggests that, in the case of sex offenses like the one here, "the statutory maximum term of supervised release is recommended." *See* U.S.S.G. § 5D1.2(b)(2) (policy statement); *see also Harrison*, 899 F.3d at 53. And here, lifetime supervised release is reasonable given "the heinous nature of [Ojeda's] offense," the

pattern of prohibited sexual conduct against his victim, including abuse that continued after Ojeda no longer lived with the victim, and an effort to protect the public from any potential additional crimes by Ojeda.[4] (AA 46-48). What is more, this Court has upheld a sentence in similar circumstances explaining that the Court "join[ed] several other circuits which have upheld lifetime terms of supervised release in child-pornography cases." *Harrison*, 899 F.3d at 53-54 (listing cases).

At bottom, Ojeda's arguments on appeal reflect no more than his disappointment with his sentence. He runs through the mitigating factors but all he does is present his alternative appreciation of how the analysis could shape out, and he does not maintain that is the only way the analysis could shape out.[5] (*See* AA 28-29); *see also United States v. Ruperto-Rivera*, 16 F.4th 1, 6 (1st Cir. 2021) (noting that an appellant's argument that "boils

_____

[4] Ojeda can still petition for a modification or termination of his term of supervised release at any time after one year of supervised release, provided it is justified by his conduct and in the interest of justice. *See* 18 U.S.C. § 3583(e)(1).

[5] As one of his mitigators in support of a shorter supervised release term, Ojeda provides that he has a good relationship with his mother who has provided unwavering support. (AB 28). But Ojeda's mother blamed the victim and the victim's mother for what had happened and therefore may be unlikely to steer Ojeda away from re-offending. (*See* SA 12).

down to a lament that the court did not weigh the aggravating and mitigating factors as counsel would have preferred" cannot demonstrate an error). A court does not abuse its discretion "merely because it could have exercised its 'ample latitude' differently." *See Fontanillas-López v. Bauzá Cartagena*, 832 F.3d 50, 55 (1st Cir. 2016). And Ojeda is "not [entitled] to a particular result." *United States v. De la Cruz-Gutiérrez*, 881 F.3d 221, 228-29 (1st Cir. 2018) (internal quotation marks and citation omitted). Accordingly, this Court should also affirm the district court's imposition of supervised release term on Ojeda.

### III. The district court did not abuse its discretion when it imposed a special monetary assessment.

**Issue**

Ojeda challenges the imposition of the $5,000 special monetary assessment on him. (AB 19-24). He argues that the record showed that he was indigent. (AB 21-24).

**Standard of Review**

This Court reviews the special monetary assessment based on indigency for clear error. *United States v. Procell*, 31 F.4th 32, 38 (1st Cir. 2022).

**Discussion**

The district court correctly imposed the $5,000 monetary assessment. Under 18 U.S.C. § 3014, district courts are required by statute to "assess an amount of $5,000 on any non-indigent person" convicted of various enumerated offenses related to human trafficking and sexual exploitation, including sexual exploitation and other abuse of children. *Procell*, 31 F.4th at 38. And defendants have "20 years after the release from imprisonment" to pay the assessment. 18 U.S.C. §§ 3014(g), 3613(b).

Here, Ojeda's crime of conviction triggered the $5,000 special assessment. So, consistent with the mandate of 18 U.S.C. § 3014, Ojeda's PSR advised the district court that he was subject to a $5,000 special assessment for his count of conviction.[6] (SA 16 & n.8). Accordingly, at Ojeda's sentencing

---

[6] Contrary to Ojeda's appellate contentions (AB 22), the probation officer had provided that the $5,000 shall be assessed by the court. (SA 16). Although the probation officer had determined that, based upon Ojeda's financial profile, "it appears that he does not have the ability to pay a fine within the advisory guideline range," (which was $50,000 to $250,000), the officer noted that, when it made its determination regarding Ojeda's inability to pay the fine, it also considered that the court may impose the additional $5,000 assessment and restitution on Ojeda. (SA 15 & n.7; *contra* AB 22 (stating that the probation concluded he was unable to pay the assessment)); *see United States v. Meek*, 32 F.4th 576, 582 (6th Cir. 2022) (noting the district court could have waived the fine precisely because it levied the § 3014 assessment).

proceedings, the district court ordered that he pay the $5,000 mandatory assessment. (AA 54). When Ojeda objected, inferring that he was indigent at the time of sentencing and that he likely had little job prospects upon release, the court noted that, "[w]ell, you know, if he is indigent at that time, then, as you say, he doesn't have to pay it, but I don't know that." (AA 59). So, although the district court imposed the assessment under 18 U.S.C. § 3014, it also gave Ojeda the opportunity to ask for reconsideration and show that he should not be subject to the mandatory provision. Ojeda points to no authority to show that the district court erred in addressing § 3014 in such a way. The court did not err by putting the onus on Ojeda to show that he was indigent.

To begin, as Ojeda seems to agree on appeal (AB 22), an inability to pay a $5,000 assessment is not confined to a calculation of Ojeda's present assets. This Court in *Procell* remarked that a "district court's focus on future earning potential has been endorsed by other circuits." 31 F.4th at 38 (citing *United States v. Graves*, 908 F.3d 137, 142-43 (5th Cir. 2018) and *United States v. Kelley*, 861 F.3d 790, 802 (8th Cir. 2017)). "Congress allowed a 20-year period [from entry of criminal judgment or release from imprisonment] for defendants to pay the special assessment." *United States v. Otradovec*, 72 F.4th

794 (7th Cir. 2023). "Because the defendant's obligation to pay persists for at least twenty years after his sentencing, it would make little sense for the district court to consider *only* the defendant's financial condition at the time of sentencing." *United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019). And here, the district court had Ojeda's ability to pay in the future in mind when it stated it cannot find that Ojeda would be indigent after his release for purposes of the $5,000 assessment.[7] (AA 59).

---

[7] Ojeda claims on appeal that the district court did not make appropriate findings of indigency and left that determination to the Financial Litigation Unit at the U.S. Attorney's office. (AB 20-21). But the court explicitly imposed the $5,000 assessment on Ojeda. (AA 54). It did not leave that determination to the U.S. Attorney's Office. Only when Ojeda objected and provided its reasons, the court said it did not know that Ojeda would be indigent and unable to pay in the future. (*See* AA 59). The court's mention of the Financial Litigation Unit was not in reference to the Unit deciding on whether to impose the $5,000 assessment—the court already did so. (*See* AA 59). Rather, the court indicated that, if Ojeda's circumstances change and he is unable to pay the assessment following incarceration and release, the government can petition the district court to remit all or part of the unpaid portion of a special assessment if reasonable efforts to collect the assessment are not likely to be effective. *See* 18 U.S.C. § 3573. What is more, Ojeda's reliance on *United States v. Fowler*, 956 F.3d 431 (6th Cir. 2020), does not dictate a contrary result. (AB 21). For one, the Sixth Circuit later explained that *Fowler* was contrary to its prior caselaw and rejected the argument that a district court must specifically find the defendant not indigent before imposing the § 3014 special assessment. *Meek*, 32 F.4th at 582-83.

Indeed, the district court explicitly stated, when sentencing Ojeda, that it had considered his employment record and education history. (AA 46, 48; *see also* AA 46 (stating it had considered Ojeda's PSR, which in turn described his educational background and work history)); *see Jimenez-Beltre*, 440 F.3d at 519 ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the [PSR] with what the judge did."). For example, the record showed that Ojeda had an associate degree in international cooking (AA 46; *see* AA 32, 37; SA 13), obtained a vocational and technical degree in auto electromechanics (SA 13), and completed three years of studies at the InterAmerican University in Fajardo, Puerto Rico (SA 13; AA 32, 37). In addition, although he was unemployed for six months prior to his arrest, he worked as a DoorDash driver for approximately a year, had a fulltime employment at a Walmart warehouse for a year and a half, and at Papa John's pizza restaurant for over ten years (and was promoted to an assistant manager there). (SA 13-14). So, by his own words, he was employed for over twelve and a half years. (SA 13-14). In addition, he has the support of his family. (AA 32, 37; *see* SA 12). Thus, there were reasons for the court to infer that Ojeda would not be indigent for the rest of his life, contrary to Ojeda's claim on appeal. *See Procell*, 31 F.4th at 38 ("[W]e cannot

say that the district court clearly erred in finding, on the present record, that his education level and family support, among other factors, indicate sufficient future earning potential to render him non-indigent."); *cf. United States v. Kelley*, 861 F.3d 790, 802 (8th Cir. 2017) ("This ability to earn money in the future precluded a finding of indigence for purposes of § 3014.").

Indeed, the law affords Ojeda 20 additional years after his release from prison to pay the $5,000 special assessment. 18 U.S.C. § 3014(g). In light of this lengthy period of time to pay the assessment, Ojeda's fairly extensive work history, his educational background, and the fact that he can earn money while incarcerated,[8] he cannot show that the district court erred by imposing the mandatory special assessment.

Contrary to Ojeda's contentions on appeal, a court's prior orders relevant to a defendant's financial status do not preclude a court's later conclusion of non-indigency. (*See* AB 20, 22). For example, the court assesses a defendant's immediate ability to pay when granting court-appointed counsel because "'any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.'"

---

[8] *See* 28 C.F.R. Part 545 (describing Bureau of Prisons' work and compensation, including the Inmate Financial Responsibility Program).

*Kelley*, 861 F.3d at 802 (quoting *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)). But "when assessing whether a defendant is unable to pay a $5,000 special assessment, a court considers the defendant's current and future financial condition and bases its decision on the additional information provided in a PSR." *Graves*, 908 F.3d at 143 ("That Graves was entitled to appointed counsel thus does not undermine the district court's later finding that he was not indigent."). And determining whether defendant has the ability to pay an assessment over 20 years is a different question from assessing a defendant's ability to pay for a lawyer now. So, although a qualification for the appointment of counsel under the Criminal Justice Act may be instructive on whether a defendant is impoverished now, it does not definitively determine indigence for § 3014 purposes.

In addition, although the district court decided not to impose a separate fine of $25,000 to $250,000 under the guidelines, that determination is reconcilable with its decision to impose the $5,000 special assessment because "a defendant may not have the same ability to pay $5,000 as he would have to pay five to fifty times that amount." *Graves*, 908 F.3d at 143; *see Meek*, 32 F.4th at 582 ("If anything, the district court's decision to waive a

separate fine is consistent with a current inability to pay and leaves Meek better positioned to pay the § 3014 assessments.").

What is more, as noted above, the court provided that, if Ojeda demonstrates indigency, he does not have to pay the assessment. (AA 59). The district court considered Ojeda's ability to get a job upon release, as per his arguments to the same, and indicated it would invite reconsideration if Ojeda was unable to pay. (AA 59). So the district court, in effect, left open the possibility of removing the special assessment. In practical terms, that meant Ojeda will have the ability to demonstrate indigency up to 20 years after his release. Thus, as the foregoing demonstrates, there was no error.[9] *See United States v. Rivera-Carrasquillo*, 933 F.3d 33, 42 (1st Cir. 2019) ("[W]inning a clear-error challenge is no easy thing because the challenger must show that the contested finding stinks like a 5 week old, unrefrigerated, dead fish.") (internal quotation marks and citation omitted).

In the end, Ojeda has not demonstrated any reversible error in the district court's decision that would call for vacating his sentence on appeal

---

[9] To the extent Ojeda asks this Court to find him indigent (*see* AB 23-24), that is not the right remedy. Instead, assuming arguendo this Court finds reversible error, the only appropriate remedy is a remand for the district court to conduct its analysis anew.

and remanding for resentencing. Accordingly, the Court should affirm his sentence.

## CONCLUSION

For the foregoing reasons and authorities, this Court should affirm the district court's sentence and judgment.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this day of September 23, 2024.

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Maarja T. Luhtaru
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 772-3940
Fax (787) 771-4050

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. AA. 32(a)(7)(B) because:

   ☑ the brief contains <u>9,491</u> words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because:

   ☑ the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using <u>Book Antiqua</u> in <u>14 point</u>, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____ with _____.

Dated: September 23, 2024                    /s/ Maarja T. Luhtaru
                                         Assistant United States Attorney

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on September 23, 2024, I filed the above brief

with the Clerk of Court using the Court's electronic-filing system, which sent

a notification of the filing to the appellant through his attorney of record, a

registered user of the system.

/s/ Maarja T. Luhtaru
Assistant United States Attorney